## A VOID DECREE OF DIVORCE MAY BE OPENED AFTER REMARRIAGE.

[Common Pleas Court of Cuyahoga County.]

· WALTER B. SOLOMON v. ANNA A. SOLOMON.

Decided, May 29, 1903.

*Action for Divorce Deals with Status—Domicile Fixes Status, and is Regulated by the Sovereign Power—Want of Domicile Renders Decree Void—Void Decree May Be Opened After Remarriage.*

1. Marriage is a contract ending in legal status, and divorce *a vinculo* is the legal dissolution of this status. An action for divorce, so far as it deals with this status, is a proceeding *in rem;* and it is essential to the validity of a decree in such action that this status, which is the subject of the action, shall be within the jurisdiction of the court that entertains the action.

2. Each sovereign state has exclusive control of the marriage status of persons domiciled within its confines, and may fix the length of domicile of one or both parties that shall give its courts jurisdiction of this status; and in Ohio, this jurisdictional requisite is, that "the plaintiff shall have been a resident of the state at least one year before filing the petition."

3. Where the plaintiff in a divorce action has not such domicile, the court can not have jurisdiction of the subject of the action—the *res* that is to be affected by the decree, the proceeding in *coram non judice*, and a decree rendered therein is void.

4. Where both parties are domiciled in another state or country, and the husband, by fraud and perjury as to his domicile, procures a decree of divorce in Ohio, upon constructive service, and without the wife's knowledge, the court rendering the decree may enter-tain her motion to open the decree and let her in to defend, under the provisions of R. S., 5355, even though the husband has since remarried. *Parish* v. *Parish*, 9 O. S., 534, criticized and distinguished.

PHILLIPS, J.

On the 13th of April, 1901, plaintiff filed his petition for divorce, charging gross neglect of duty, and an affidavit for service by publication. The cause was advanced for trial, and a decree entered for plaintiff, October 29, 1901.

On the 15th of March, 1902, defendant filed her motion to open said decree and allow her to defend, on the grounds: (1) That she had no actual notice of the pendency of the case until after the decree; (2) that plaintiff was not a resident of this state for one year prior to the filing of his petition, and was not, at the time of filing his petition, a bona fide resident of this county; and (3) that the allegation in his affidavit for service by publication— "that defendant's whereabouts is absolutely unknown to him"— was.false.

Six affidavits of persons residing in Hamilton, Ontario, were filed by defendant, sustaining the said motion, and showing that when said petition was filed both plaintiff and defendant resided in Hamilton, Ontario, where plaintiff was then and theretofore engaged in business.

On the 31st of March, 1903, said motion of defendant was heard and granted; and on April 3, 1903, the said order of March 31, 1903, was, for good cause appearing, set aside.

On the 17th of April, 1903, plaintiff filed his motion to strike the said motion and affidavits of defendant from the files, for the reasons that the same were filed without authority of law, and that the court had not jurisdiction to entertain such motion.

All proceedings heretofore had in this case were had before another member of this court; and the questions now for determination are those made by said motion filed April 17th, to strike from the files the pending application of defendant to open the decree and let her in to defend.

Defendant's motion and affidavits were filed under favor of R. S., 5355, which provides that, "A party against whom a judgment or order has been rendered without other service than by publication in a newspaper, may, at any time within five years after the date of the judgment or order, have the same opened, and be let in to defend," etc. It is claimed by counsel for plaintiff, that the provisions of said section do not apply to a decree of divorce; and it is urged that this decree ought not to be disturbed, because the plaintiff has since married another woman, who is now pregnant by him.

The authorities are not at one upon the question whether a decree of divorce may be opened or reviewed after the term at which it was entered; and in view of this fact, I have undertaken to determine, if I may, upon what principle the decisions may be reconciled or distinguished, and to ascertain what fundamental doctrines of jurisprudence must control a right decision of the question. And, at the outset let me say, that the whole subject lies clearly within the realm of the *jus gentium,* rather than within the *jus civile,* or municipal law, as Sir Henry Paine has admirably defined and distinguished these realms of law. (Paine's Ancient Law). In all the cases denying the right to open or review such decree, the danger of intermediate marriage has been a controlling consideration; and it must, I think, be conceded that, in the absence of clear statutory inclusion of such decrees, and where the court rendering the decree had jurisdiction of the subject-matter, and of the parties, and of the subject of the action, consideration of public policy may sometimes forbid the opening or review of a decree of divorce. But I think a careful examination of the decisions will show that there is a well-grounded distinction between cases where the court rendering the decree had, and where it had not, jurisdiction of the *subject* of the action, and of the parties. Jurisdiction is the right and power of a court to entertain an action—to hear and determine it. It is essential to the exercise of jurisdiction in any cause, that the court shall have cognizance of the subject-matter of the action, and that the proper parties shall be before the court; and where the judgment of the court is to operate *in rem*—that is, upon *a subject* of the action—the *res,* or subject to be affected, must also be within the cognizance and authority of the court. That is to say: (1) The subject-matter of the action—the right asserted and the relief sought—must be such as falls within the cognizance of the court as fixed by the Constitution and the laws; (2) the defendant must be brought into court, by voluntary appearance, or by the authorized service of process, actual or constructive; and (3) where there is a *subject* of the action—a thing to be affected by the judgment sought—it must be within the territorial jurisdiction of the court. The concurrence of these jurisdictional prerequisites is essential

to the competency of the court to entertain an action; and when any one of these requisites is wanting, the proceeding is *coram non judice*. A court may have jurisdiction of the subject-matter of an action, and may not have jurisdiction of the subject of the action: For example, this court has cognizance of ejectment, which is the *subject-matter*, but it may not have jurisdiction of the land sought to be recovered, which is the *subject* of the action. The Roman law distinguished *jurisdiction* from what it termed the *competency* of a tribunal; meaning by competency, the right which a tribunal has to exercise in a particular case, the jurisdiction belonging to it by law. Hack. Rom. Law (5th Ed.), 337.

The subject of an action, as contradistinguished from the subject-matter thereof, may be specific property, real or personal, as in partition, or in attachment; or it may be the *status* of a person or persons, as in proceedings respecting a pauper, or a bastard, where settlement fixes the status, and in actions for divorce, where domicile controls the status. It is in this status, depending upon domicile, that has ruled the sound and discriminating decisions of our courts, though this fact has not always been clearly pointed out in the decisions.

Marriage is a contract ending in legal status. Divorce is the legal dissolution of this status. The Supreme Court of Rhode Island has said: "Marriage, in the sense in which it is dealt with by a decree of divorce, is not a contract, but one of the domestic relations; and this relation is no more a contract than fatherhood or sonship is a contract" (4 R. I., 101). The law favors marriage, and it disfavors divorce. Because the law everywhere favors marriage, this relation, when valid by the law where it is contracted, is regarded as valid everywhere. This is not always so as to divorce. Marriage originates in the consent of the parties; but it can be legally dissolved, only at the sovereign pleasure; and in this regard, each state of the Union is an independent sovereignty. "Every state has an undoubted right to determine the status, or domestic and social condition, of the persons domiciled within its territory" (Taney, C. J., 10 How., 93). Marriage is a status exclusively controlled by the laws of the state where the relation exists (9 Wall., 108; 39 N. H., 20; 37 O. S., 319); and each

sovereign state fixes, for itself, what length and character of residence shall constitute such domicile as will bring this status—
this subject of a divorce action—within the jurisdiction of its
courts. And because a husband and wife may have and maintain
separate domiciles, within different sovereignties, the law must,
and does, confer jurisdiction of the marriage status upon the courts
of the state within whose confines only one of the parties is domiciled. In Ohio, this jurisdictional requisite is, that "the plaintiff
shall have been a resident of the state at least one year before filing
the petition" (R. S., 5690). Without such domicile, the status
does not come within the cognizance of our courts. If a husband,
resident of Indiana, should file in this court a petition for divorce, and if the defendant, also resident of Indiana, should voluntarily appear to defend, the action could not be entertained.
The court would have cognizance of the subject-matter of the action, and of the parties, but it would not have jurisdiction of the
subject of the action—the status to be affected by the judgment.
The status of the parties, and the right to affect the same by judicial action, would belong exclusively to the sovereign state of Indiana. It is the settled doctrine of jurisprudence, that no government has power to change the marriage relations of strangers temporarily within its territory.

In *Gregory* v. *Gregory,* 78 Me., 187, the court says:

"Marriage is a civil status. The rights and obligations of the
parties are not merely contractual, but are fixed, changed or dissolved by law. The *lex domicilii* controls the status of the person,
though his contractual or property rights may be subject to other
laws. The state has the absolute right to determine or alter the
civil status of all its inhabitants, no matter where they may temporarily be. But the state has this power only over its own inhabitants. The mere presence within its territory, of the inhabitants
of other states, gives it no authority to fix or change their status.
The state of their residence still retains its control over that. It
alone can free its citizens from marital obligations."

And in *Pennoyer* v. *Heff,* 95 U. S., 714, Mr. Justice Field said:

"The jurisdiction which every state possesses to determine the
civil status and capacity of all its inhabitants involves authority

to prescribe the conditions on which the proceedings affecting them may be commenced and carried on within its territory. The state has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved."

This jurisdictional requisite in actions for divorce has led some writers, and some courts, to characterize the action as a proceeding *in rem,* or as *quasi in rem* (2 Bish. Mar. & Div., 164, 755). In *Thurston* v. *Thurston,* 59 N. W., 1017, the Supreme Court of Minnesota sustained an action by the wife for alimony, notwithstanding the husband had theretofore obtained a divorce in the state of Washington, while domiciled there. In the opinion, the court said: "The action for divorce in Washington was a proceeding *in rem.* It seized nothing but the marriage status. * * The court took jurisdiction of nothing but the marriage status. Nothing else was seized. No property was seized. No property was seized or came in question, and the property in this state could not be so seized. Neither the doctrine of *res adjudicata,* nor estoppel, applies to the parties concerned or interested in a proceeding *in rem* only so far as it has regard for the thing seized and condemned by the judgment." To the same effect is the decision of our Supreme Court, in *Cox* v. *Cox,* 19 O. S., 502. And the Supreme Court of the United States recognized a suit for divorce as a proceeding *in rem,* when it said: "The rule as to the notice necessary to give full effect to a decree of divorce is different from that which is required in suits *in personam"* (181 U. S., 162). In *Dunham* v. *Dunham,* 44 N. E., 841, the Supreme Court of Illinois says, that a suit for divorce, so far as it seeks to dissolve the marriage relation, is a proceeding *in rem,* and that the thing proceeded against is the status of marriage, and that each state has the exclusive right to determine, by its own adjudication, the status of its own citizens domiciled within its own jurisdicton.

I have dwelt upon this jurisdictional requisite—as to the *subject* of the action, as distinguished from the subject-matter thereof—in order to make clear, if I may, a distinction that has too often been overlooked by the courts in dealing with divorce decrees after the term at which they were rendered.

Perhaps the leading American case maintaining the immunity of such decrees is that of *Lewis* v. *Lewis,* 15 Kan., 181, in which the opinion was delivered by Judge Brewer, now Associate Justice of the Supreme Court. The provisions of the Kansas statute as to opening judgments rendered upon constructive service are identical with Section 5355 of our statutes, except that the limitation is three years, instead of five. The husband obtained the divorce, and the application of the wife to open the judgment was based upon the sole ground that she did not have actual notice of the pendency of the action before the decree was entered. The court rendering the decree had complete jurisdiction, as both parties were domiciled within the state, and there had been constructive service, in strict compliance with the statute. The decision was rested solely on reasons of public policy—a regard for the consequences that might ensue to innocent persons, if a decree of divorce should be invalidated after it had become legally operative. The court did not hold that the language of the statute as to opening judgments did not embrace decrees of divorce; and the question whether a constitutional statute may be ignored by a court as being against public policy, was neither presented by counsel, nor considered by the court.

In the course of the opinion, Judge Brewer, after referring to some cases in which such decrees had been opened on the ground that the trial court did not have jurisdiction, or that the court had been imposed upon by fraud and perjury, distinguished the case before him, in these words: "It may be said in reference to the case before us, as distinguishing it from some that have been noticed, that it contains nothing to impeach the regularity and fairness of the proceedings.   *   *   *   It is plain that the steps pointed out by the law were fairly and correcty taken. Service was legally made, and without any trick, falsehood or imposition, and the decree was, when entered, in all respects legal and valid." And again, speaking of cases in which the decree had been opened because the affidavit to obtain service by publication was false and perjured, Judge Brewer says: "It will be time enough to decide that question when it arises."

So, it will be seen that this leading American case, in which the opinion was announced by so eminent a jurist, is carefully distinguished in its essential facts from the case now under consideration; and that no jurisdictional question was involved in that case.

In *McJunkin* v. *McJunkin,* 3 Ind., 30, the facts were similar to those in *Lewis* v. *Lewis, supra,* and a like holding was made; but the decision was rested mainly upon the peculiar language of the Indiana statute, which was construed as not including divorce decrees. No question as to jurisdiction, or as to fraud, was involved.

After the decision in this case, the Legislature of Indiana amended the statute as to opening judgments, so as expressly to exclude decrees of divorce *a vinculo;* and the case of *Ewing* v. *Ewing,* 24 Ind., 468, cited by counsel for plaintiff, was decided under this amendment, and is therefore not an authority in this case.

*Davis* v. *Davis,* 30 Ill., 180, cited by counsel for plaintiff, does not involve any question involved here. There was no question as to domicile, and there was personal service of summons. The Supreme Court sustained the trial court in overruling a motion to set aside a default decree, on the sole ground that the motion was not supported by any reason for failure to appear and defend in the action.

In *Folsom* v. *Folsom,* 55 N. H., 78, cited for plaintiff, the husband had filed a libel charging the wife with adultery, and she had filed a cross-libel, and upon trial of the case the husband obtained a divorce. The wife thereafter filed a bill, in a new action, to set aside this decree, for perjury in the trial upon which it was obtained. Not a single question involved in this case was involved in that case, in which the bill in the second suit was dismissed.

In *Gilruth* v. *Gilruth,* 20 Iowa, 255, it was held that the statutory provision in that state, for opening a judgment rendered without actual service did not apply to a divorce decree. No question as to jurisdiction or as to fraud was involved in the case.

In *Smith* v. *Smith,* 20 Mo., 166, a statute almost identical with ours, authorizing a defendant constructively served to have the

decree opened, was held to apply to a decree of divorce, after the second marriage of the party obtaining the decree. In this case there was no question as to the jurisdiction of the court, and there was no charge of fraud in obtaining the decree.

In *Edson* v. *Edson,* 108 Mass., 590, it is held that, upon petition of the party aggrieved, the court has power to vacate a decree of divorce obtained at a former term by false testimony, knowledge of which was fraudulently kept from her, and of which the court had only an apparent jurisdiction, founded on false allegations of domicile.

In *Lawrence* v. *Nelson,* 85 N. W., 84, the Supreme Court of Iowa held, that a divorce decree obtained by one who is not a bona fide resident of the state is of no validity, and may be set aside for fraud, though an innocent party will be injuriously affected thereby.

A divorce granted in a state in which neither party is domiciled or resident is void for want of jurisdiction of the subject of the action, and may be impeached for want of jurisdiction of the court granting it, although the record finds the jurisdictional fact of residence (*Thelen* v. *Thelen,* 75 Minn., 433, following 25 Minn., 29).

The consent of the parties, even with the consent of the court added, can not give jurisdiction in divorce, unless the plaintiff has resided in the state one year previous to the filing of his petition. This prerequisite is not in the nature of a personal privilege or safeguard which the defendant may waive, or the court, in its discretion, dispense with (*English* v. *English,* 19 Pa. Supr. Ct., 586).

In *Watkins* v. *Watkins,* 125 Ind., 163, the syllabus is in these words:

"Where neither the plaintiff nor the defendant is a resident of the state in which a decree of divorce is procured, the courts have no jurisdiction, and their decree is void. To give validity to the decree of a court in a suit for divorce, one at least of the parties must be a resident of the state in which a decree dissolving the marriage is rendered. Marriage gives to the parties a peculiar

legal status; and the courts of our state can not, by judgment or decree, fix the status of the citizens of another state."

In *Ditson* v. *Ditson,* 4 R. I., 93, the court said:

"It is a well-settled principle of general law, that the tribunals of a country have no jurisdiction over a cause of divorce, if neither of the parties has an actual bona fide domicile within its territory; and this holds, whether one or both the parties be temporarily resid-ing within reach of the process of the court, or whether the de-fendant appears or not, and submits to the suit. This necessarily results from the right of every nation or state to determine the status of its own domiciled citizens or subjects."

In *Bell* v. *Bell,* 181 U. S., 175, the court says:

"No valid divorce from the bond of matrimony can be decreed on constructive service by the courts of a state in which neither party is domiciled."

In *Tudor* v. *Tudor,* 101 Ky., 530, it is held that the statutory requirement as to the *county* in which a divorce action may be brought is not jurisdictional, for the reason that such actions are not in their nature local, "except to the tribunals of the country of which the parties are citizens or subjects."

Some courts have held that a divorce decree may be opened for fraud and perjury in obtaining it, even where the court entering the decree had full jurisdiction.

In *Maher* v. *Trust Co.,* 95 Ill., App., 365, it is held that "de-crees of divorce may, when obtained by fraud, be vacated in the same manner and under the same circumstances which warrant the vacation of other decrees, although the party who obtained the fraudulent decree has contracted another marriage. Public policy," says the court, "requires that courts may protect themselves by vacating decrees obtained by fraud, although the rights of inno-cent parties may sometimes be sacrificed. It is, however, a power that is to be exercised with great discretion, and only upon thor-ough investigation of the facts." In this case, the divorce action had been brought by the husband, in the proper jurisdiction, and the wife had entered her appearance, and defaulted upon the

trial. Relief was denied to the wife in the proceeding attacking the decree for fraud and perjury, on the ground that she was estopped by her laches, the husband having contracted a second marriage. It will be observed that there was no question as to the full jurisdiction of the court granting the decree of divorce.

This decision was concurred in by two of the three judges composing the court, one of whom expressed grave doubt as to whether the decision was right; and the third member of the court, delivered a vigorous dissenting opinion, citing numerous decisions opposed to that of the majority of the court.

In *Young* v. *Young,* 17 Minn., 181, the husband sued for divorce, in the proper jurisdiction, and there was actual service upon the wife. But the husband pursued a course that was designed, and that operated, to prevent the wife from asserting a defense which, if established, would have prevented a decree. This was held to be a fraud, both upon the defendant and upon the administration of justice, and the decree so obtained was opened.

From the foregoing, it will be seen that, without exception, the courts of other states have held a decree of divorce void, where the court rendering it did not have jurisdiction of the subject of the action—the marriage status, by the requisite domicile of one or both of the parties; and the courts have as uniformly entertained an application to set aside, or to open up, such decrees. And in some cases the courts have entertained such application, on the charge of fraud and perjury in obtaining the decree, even where the court had full jurisdiction.

Coming now to the decisions in Ohio, we find that our Supreme Court has several times held that a decree of divorce could not be reviewed by a bill of review in chancery.

In *Bascom* v. *Bascom,* 7 Ohio, 465 (2d pt., 125), decided in 1836, it was held that the statute then in force, declaring that proceedings under the divorce statutes should be as in chancery, did not include the right of review, which was one of the ordinary incidents of a suit in chancery. This decision was based upon two grounds: First, that the Legislature could not have intended to subject such decree to reversal, because of the evil consequences,

if either of the parties had acquired new marital relations; and, secondly, that inasmuch as the evidence in a divorce action was not required to be in writing, the case could not be reviewed upon its original aspects, as was required upon a bill of review. I submit, that the second ground, showing the impossibility of review, left no room for consideration of the first ground; for where there is no *power* to act, there can be no ground to consider the *propriety* of acting. The case properly dealt only with the scope and application of procedure by bill of review, and not with the sanctity or immunity of divorce decrees.

In *Bingham* v. *Miller*, 17 Ohio, 445, decided in 1848, the action below was assumpsit, and the plea was the general issue, with notice of set-off. The plaintiff having rested, the defendant proved that she had been married to one Ralph Bingham, who was still alive. The plaintiff then put in evidence an act of the Legislature divorcing her from said Ralph. The trial court refused the request of the defendant to charge that plaintiff was still a *feme covert,* and therefore could not sue in assumpsit. The Supreme Court, in a well-reasoned opinion, held that the Legislature had no power to grant divorces, because the legal dissolution of the marriage relation is the exercise of judicial power, and not of legislative power. "But," says the court, "to avoid the consequences that would result from declaring all those void which have been granted by the Legislature during the existence of the state, rendering illegitimate the issue of second marriages, the court will pronounce them valid."

It would appear, at first view, that this decision is contrary to the uniform decisions in other states, holding that where the tribunal granting the divorce did not have jurisdiction of the status, the decree is void, and will be so held, even where its validity is drawn in question collaterally. But an examination of the case will show that the question of status did not arise, and was not considered. So far as appears from the report of the case, both parties were domiciled in Ohio; nor would the question of status have affected the decision, for it was rested upon entirely different ground, to-wit, the want of power in the Legislature to dissolve the marriage relation.

I am in full and unqualified accord with this decision. It was really, though not so stated, an application of the maxim, *argumentum ab inconvenienti*. Here was a debtor, seeking to prevent a judgment, by the technical means of having the court hold his creditor disqualified to sue, because the tribunal that had divorced her, and that had divorced hundreds of our citizens, exercised a power that, under the Constitution, did not belong to it. The court was called upon to contrast the consequences of depriving a real debtor of a technical means of defeating his creditor, and the consequences of a holding that would invalidate the legislative divorces granted in Ohio for more than forty years. But it can hardly be said that the action of the court, under those conditions, gives any indication of what the court would have done under the conditions of this case, where the court is asked to give immunity to a decree not only rendered without jurisdiction, but obtained by fraud and perjury, when, to do so, is to condemn a legitimate wife, not only unheard, but unheard because of the fraud and deception practiced by her husband, both upon her and upon the court.

The case most relied upon by counsel for plaintiff is *Parish* v. *Parish*, 9 O. S., 534, decided in 1859. This was an original bill in chancery, to impeach and set aside a decree *a vinculo*, for fraud and perjury in obtaining it. The decree was obtained by the husband, in Brown county, of which county he was not a resident, though both husband and wife resided in Ohio, and service was had by publication. The husband falsely represented that he was a resident of said county, and suborned witnesses to prove his alleged residence; and he suppressed an exchange of the local paper containing the notice with papers of the locality where the wife resided. The court held that the decree could not be disturbed, by such proceeding, for the reasons: (1) That it would be against public policy, and (2) that the divorce statute then provided that "the decree * * * shall be final and conclusive."

In the opinion, the court says: "The court in Brown county had jurisdiction of the subject-matter, and of the parties—of the one by his appearance, and of the other by publication." Thus

the fact that the husband was not a resident of the county at the time of filing his petition, was not regarded as affecting the jurisdiction of the court; and this I understand to be the law (101 Ky., 530). Jurisdiction of the status—the *subject* of the action—is not spoken of, unless this is what is meant by "subject-matter," which is probable. But as both parties resided in the state, there is no ground to question the jurisdiction of the *status.* So, it appears that there was full jurisdiction, including the subject-matter, the subject, and the parties; and this makes an essential distinction between that case and the one under consideration.

In *John* v. *John,* 53 O. S., 656, the Supreme Court affirmed on the authority of *Parish* v. *Parish,* without report. The case is stated in 34 Bull., 189, where it appears that the husband, who filed the petition for divorce, was domiciled in Ohio, and was a resident of the county in which the action was brought, but that he had falsely stated, in his affidavit for publication, that he did not know the whereabouts of the defendant. The case was upon all points with the Parish case, and the courts refused to set aside the decree, holding that the court granting it had full jurisdiction.

In *Van Fossen* v. *The State,* 37 O. S., 317, it is held that a decree of divorce rendered in another state, wherein neither party is domiciled, is of no force or effect in this state, where both parties have their domicile.

The question under consideration has been variously decided by the inferior courts of this state.

In *Wellington* v. *Wellington,* 7 Bull., 20, the common pleas of Hamilton opened a decree obtained by fraud and perjury, neither party being domiciled in Ohio, and the court, for that reason, being without jurisdiction of the subject of the action.

In *Casler* v. *Bowen,* 39 Bull., 4, this court, and the circuit court of this county, refused to vacate a decree of divorce, after the death of one of the parties, there being no question as to the jurisdiction of the court. Affirmed by the Supreme Court, without report (56 O. S., 761).

In *Bino* v. *Hodgson,* 13 Bull., 33, the Hamilton district court held, that while fraud in obtaining a decree of divorce may not,

for reasons of public policy, be ground for setting it aside, the question as to the jurisdiction of the court is open; and the want of jurisdiction appearing, the bill to set aside the decree was sus-tained.

In *Travers* v. *Travers,* 47 Bull., 188, the probate court of But-ler, then having jurisdiction in divorce, opened its former decree, under Section 5355, on the ground that the plaintiff was not a bona fide resident of Butler county, though she had her domicile in the state. In doing this, the court was in error, I think, in regarding residence in the county of the forum as a jurisdictional requisite.

In *Van Derveer* v. *Van Derveer,* 30 Bull., 96, the Franklin common pleas opened a decree, where there was no question as to the jurisdiction of the court, holding that Section 5355 embraced such decrees, and holding that considerations of public policy could not control the plain provisions of a constitutional statute (follow-ing, as to this point, *Probasco* v. *Raine,* 50 O. S., 378).

In *Fritz* v. *Fritz,* 6 N. P., 258, the husband had obtained a di-vorce upon a petition filed by him, in which the wife was named as plaintiff, and he was defendant. There was publication of notice, but the wife knew nothing of the pendency of the action. Judge Hollister, of the Hamilton common pleas, sustained the applica-tion of the wife to set aside the decree, on the ground that the court rendering it did not have jurisdiction, and that its procure-ment was a gross fraud upon the court. He distinguished and criticized the Parish case; and after citing numerous authorities, he said: "This court feels justified, under these circumstances and under the authorities, in holding that it has inherent power to set aside any decree, including a decree of divorce, that has been pro-cured by fraud upon the jurisdiction of the court." And he says, in effect, that the Parish case is authority for holding that a de-cree of divorce obtained by fraud is immune from attack, *only when the court rendering it had full jurisdiction.*

In the Parish case, the decision, so far as it involved considera-tions of public policy, was rested upon the decision in *Greene* v. *Greene,* 2 Gray, 631; and the only contrary decisions in other

states, either cited or considered, were those in 12 Pa. St., 328, and in 12 Barb., 640.   Since that time, the Massachusetts decision has been overruled by the same court that rendered it, and contrary decisions have greatly multiplied everywhere.   The state of the authorities has so changed since the Parish case was decided, that the weight of that decision, so far as it rested upon precedent, has been greatly weakened, to say the least.   And in addition to this change as to precedents, there has been wrought in our state, and throughout this country, such change of attitude, judicial and otherwise, toward the marriage relation and its legal dissolution, that the courts are called upon, in a higher measure than formerly, to guard both the courts and those to be affected by divorce decrees, from fraud and perjury by those who surreptitiously seek to free themselves from marital and parental obligations.   And such decisions as that in the Parish case—though fortunately they are less frequent than formerly—are a standing invitation to the perpetration of fraud and perjury in corrupt and meretricious proceedings for the *ex parte* dissolution of families.

In the argument of this motion, much stress was laid upon the injustice that will be done to the plaintiff's second wife, and the possible issue of his second marriage, if the decree in this case be opened up and the defendant let in to defend.   Of course this is a very serious consideration.   But it leaves out of consideration the injustice that a contrary course may do to this defendant; and it must be conceded that concern for the second marriage must rest upon apprehension as to the result of a full and fair hearing of the case upon its merits.

Some courts have given controlling consideration to the interests of the second wife; but very many courts have, upon what seems to me to be stronger reasons, considered the equities of the situation to be with the first family, and have held that the subsequent marriage should not be allowed to operate as an affirmance of a decree of divorce fraudulently procured.   I will refer to some of these cases.

In *Caswell* v. *Caswell*, 120 Ill., 377, the court said:

"The facts of appellant's marriage, of there being children thereof, and of the hardship which will result to innocent persons

from setting aside the decree of divorce, are dwelt upon as objections to the granting of such relief. Such ill consequences we can appreciate, and must regret; but yet they do not form reason sufficient for a denial of the exercise of the court's power to vacate such decree obtained by fraud, as has often been determined."

In *Whitcomb* v. *Whitcomb,* 46 Iowa, 437, the court says:

"It is argued that the decree of the court below, vacating the decree of divorce, should be reversed because of the effect upon Rachel Patterson and her child. Courts find many cases of hardship, in which sympathy is invoked for the suffering of the innocent because of the wrongs of others; but it must be remembered in this case, that whatever the suffering and disgrace the innocent child may in the future endure, it is not imposed by the law, but by the wrongful acts of the plaintiff. We must declare the law as we find it, regardless of the consequences to individuals."

And in the later case of *Bush* v. *Bush,* reported in the same volume, the Iowa court said:

"It is not to be denied that courts have shown a manifest reluctance to set aside a decree of divorce after a second marriage; but we have seen no case where it has been held that a decree of divorce will not be set aside except upon averment and proof that a second marriage has not taken place."

In *Crouch* v. *Crouch,* 30 Wis., 667, the court says:

"We sympathize with the parties who have placed themselves in this unfortunate position, and more especially do we regret that we are compelled to make a decision that will render the child of the last ill-advised union illegitimate; but we have no power to breathe life into these void proceedings. Let the consequences be ever so disastrous to individuals, we can only declare the law as we find it. We have no authority to modify it in cases of supposed hardship."

And the same court, in *Everett* v. *Everett,* 60 Wis., 200, says:

"In this case, the interests and well-being of society, as well as the cause of justice, require that the fraud and imposition should not be successful. It is of the highest importance that it be dis-

tinctly understood that the use of such means to procure a divorce will meet with no favor from the courts of this state, whenever the fraud can be clearly shown. It may be true that the affirmance of the order of the county court will involve an innocent third party in distress and disgrace, and destroy rights acquired in reliance upon a judgment, but these consequences are unavoidable."

In *Bomsta* v. *Johnson,* 38 Minn., 230, the court said:

"Aside from a well justified reluctance to annul decrees in cases where second marriages have been contracted, the tribunals of this country have, with few exceptions, treated final decrees of divorce precisely as final judgments in ordinary civil actions. When fraudulently obtained, they have been speedily set aside upon motion, and wholly ignored in criminal prosecutions, without regard to consequences and the apparent wrong that might be perpetrated upon adults who had married the divorced parties, or upon innocent children, the issue of such marriage."

In *Adams* v. *Adams,* 51 N. H., 388, the court said:

"This doctrine in regard to impeaching judgments and decrees for fraud has been applied in numerous cases to decrees in divorce suits, and the weight of authority is greatly in favor of such application. Upon principle, there is no solid ground for any distinction between decrees in divorce suits and other judgments; or if there be any, it is to be found in the much greater danger of fraud and imposition in divorce cases as compared with others."

In *Edson* v. *Edson,* 108 Mass., 590, the court said:

"Reasons of public policy, or a regard to the consequences which might ensue to innocent parties from the exercise of a power to invalidate a decree of divorce after it had become *res adjudicata,* do not constitute sufficient reasons for a denial of the existence of the power."

In *Smith* v. *Smith,* 20 Mo., 166, the court says:

"It appears that the husband, after obtaining the decree of divorce, was married to another woman; and this is urged as a reason against setting aside the decree. It is not perceived how the wrong done to the second wife should be any reason for denying the first one opportunity of vindicating herself against the charges of adul-

tery and drunkenness in the original bill.   *   *   We have nothing now to say about the effect of the proceeding in this case, upon the second marriage or its issue, if there be any, because such matters have no connection with the questions before us."

In *Maher* v. *The Trust Co.,* 95 Ill. App., 365, decided in 1900, the court says:

"It may be that as between the two women, each a sufferer through the wrong of Maher, there is slight difference in claim to sympathy. But it is nevertheless an all-important consideration that the interests and claims of one are grounded upon the fraud practiced by Maher upon the court, and the maintenance of those claims involves a support of the fraud, and a permitting of it to succeed. It is, in my opinion, of much greater importance to the administration of law and the preservation of the integrity of judicial procedure, that the fraud be kept from a final success, than is the protection of appellee from injury resulting to her from Maher's wrong. * * It may well be regarded as matter of great regret, and of much more serious consequences, that dishonest litigants should be permitted to believe that a decree of divorce, procured upon a false charge and by perjured testimony, can be made good by the continued deception of the victim of it, until another marriage can be effected by the party who has thus imposed upon the court."

I find that the courts of this country have, in numerous cases, upon full consideration, and with entire unanimity, held, that a decree of divorce obtained by fraud and perjury in a state wherein neither of the parties is domiciled, is void, and may be opened up, or set aside, at any time, by the court that rendered it. A majority of the cases hold that a decree obtained by fraud and perjury may be opened up, even though the court rendering it had full jurisdiction; while a contrary holding is made by some courts, upon what seems to me to be a mistaken view of the requirements of public policy.

It is a principle of justice, as it is of jurisprudence, that a party accused in a judicial proceeding shall have the right, and the opportunity, to be heard. And when this right is thwarted, and this opportunity is denied, by the fraud and perjury of one who invokes judicial interposition, justice is outraged, and the court is prosti-

tuted, and innocent persons are victimized, by the very means that have been provided to prevent fraud, to protect rights, and to administer justice.  If the courts are powerless to undo their own decrees, when obtained by fraud and perjury, without jurisdiction, and without the knowledge of those accused, they must not only fail of the purpose of their creation, but they have become instrumentalities of danger to the institutions upon which society and government rest.  As the Supreme Court of Massachusetts has said: "If there is no remedy by which judgment so procured to be rendered can be annulled, courts of justice may be made instruments by which the grossest frauds may be successfully accomplished, to the great wrong and injury of innocent persons" (108 Mass., 596).

In this case, it appears, from the affidavits on file in support of defendant's motion, that neither party had a domicile in Ohio, and for that reason the court did not have jurisdiction; and it appears that the defendant has been victimized, and the court has been deceived and imposed upon by the fraud and perjury of the plaintiff.  In such case, the power of the court to entertain the defendant's motion to open up the decree and let her in to defend, is clear, both upon principle and upon authority; and the plaintiff's motion to strike defendant's said motion from the files is overruled.

*E. B. Bauder* and *W. C. Rogers,* for plaintiff.

*Joseph & Waite,* for defendant.