## A DIVORCE DECREE CAN NOT BE REOPENED AT A SUBSEQUENT TERM.

[Circuit Court of Cuyahoga County.]

WALTER B. SOLOMON v. ANNA A. SOLOMON.*

Decided, May 16, 1904.

*Divorce—Publication for Defendant—Plaintiff a Non-resident—Decree Granted—Defendant Moves at a Subsequent Term—To Reopen the Case for Fraud—Section 5355 and Its Scope—Does not Reach the Question of Original Jurisdiction, and not Applicable to a Divorce Proceeding—Public Policy as to Divorce.*

1. Section 5355, Revised Statutes, relating to the reopening of cases within five years in which there was no other service than by publication and the defendant had no actual notice of the pendency of the action, does not authorize the reopening of a divorce suit at a term subsequent to that in which the decree was entered.

2. Owing to the effect upon innocent parties which may result from the opening up of decrees for divorce, public policy requires that they be treated as a peculiar class in themselves to be governed by principles especially applicable to such cases.

3. Section 5355 would authorize the personal representative of a party who had died after judgment to have the judgment opened up in the same manner as the party if living might have done himself, and conversely that in a proper case a judgment might be opened up against the personal representative, for the purpose of being let in to defend. But in a divorce proceeding there is nothing to defend, for the case has abated and passed beyond the limits of revivor.

MARVIN, J.; HALE, J., and WINCH, J., concur.

Error to the court of common pleas.

The parties here are as they were in the court below.

Prior to the 13th day of April, 1901, the plaintiff and defendant were husband and wife. On said date the plaintiff filed his petition in the court of common pleas of this county, praying to be divorced from the defendant. Among the allegations of the petition was the following:

"The plaintiff says he has been a resident of the state of Ohio for the year last past, and is at present a *bona fide* resident of the said county of Cuyahoga."

The defendant was a non-resident of the state of Ohio at the time the action was brought, and, on the 8th day of May, 1901, the plaintiff filed his affidavit with the clerk of said court,

*Reversing 1 N. P.—N. S., 113.

setting up that the defendant was not in the state of Ohio, and that her whereabouts were unknown to the plaintiff, and that service could not be made upon her other than by publication of notice to her. Thereupon notice was published to her of the filing and pendency of the petition, in a newspaper published and of general circulation in said Cuyahoga county, and such proceedings were thereafter had in the cause that on the 29th day of October, 1901, an order was made in said court, in these words:

"This cause having been duly advanced, came on to be heard October 29, 1901, upon the petition and evidence, the defendant being in default of answer or demurrer, although duly served with process according to law, and upon due consideration thereof the court finds that the allegations of the petition are true; that the plaintiff was a resident of the state of Ohio for one year next preceding the filing of his petition, and at that time was a *bona fide* resident of this county of Cuyahoga, and that the parties were duly married as stated in the petition. The court further finds that the defendant has been guilty of gross neglect of duty to said plaintiff as charged in the petition, and by reason thereof the plaintiff is entitled to a divorce as prayed for. It is therefore ordered, adjudged and decreed that the marriage contract heretofore existing between the parties hereto, to-wit, said Walter B. Solomon and Anna A. Solomon, be and the same is hereby dissolved and both parties are released therefrom."

At a subsequent term of said court, to-wit, on the 15th day of March, 1902, the defendant filed in said court a motion asking that the order and judgment heretofore quoted be opened and that she be let in to defend, and as cause for the granting of such motion it is stated therein:

"That she had no actual notice of the pendency of this case in time to appear in court and make a defense; that the plaintiff was not a resident of the state of Ohio during the year prior to the filing of the petition herein, and was not at the time of the filing of the petition a *bona fide* resident of Cuyahoga county, Ohio; that the allegations contained in the affidavit for publication herein, namely, 'that the said defendant's whereabouts is absolutely unknown to him' (meaning thereby the said plaintiff) was absolutely false and untrue."

With this motion the defendant filed an answer, which admits the marriage of the parties as stated in the petition, and denies each and every other allegation and averment in said petition contained. She also filed a large number of affidavits

tending to establish the averment in her said motion, that the plaintiff was not a resident of Ohio for the year next preceding the filing of his petition and that he was not a *bona fide* resident of the county of Cuyahoga at the time of the filing of such petition. The plaintiff was duly notified of the filing of the defendant's said motion, and, on the 17th day of April, 1903, the plaintiff filed his motion to strike from the files the motions and affidavits of the defendant, hereinbefore mentioned. This last motion was overruled by the court, and the motion of the defendant for the opening up of the original judgment and order was granted.

To the order of the court overruling the plaintiff's motion to strike the defendant's motion from the files exception was taken, as also to the order of the court opening up the original judgment in the case. If error was committed by the court in its ruling upon either of these motions, then whatever was done thereafter is without avail. We are brought, then, to a consideration of the question whether there was any authority in the court to hear and determine the motion made by the defendant.

On the part of the plaintiff it is urged that after the term of court at which the decree of divorce was entered the court was without authority of law, upon the defendant's motion to open up that decree. On the other hand, it is urged that such authority is vested in the court under Revised Statutes, Section 5355, which reads:

"A party against whom a judgment or order has been rendered without other service than by publication in a newspaper, may, at any time within five years after the date of the judgment or order have the same opened and be let in to defend; but before the judgment or order can be opened, the applicant shall give notice to the adverse party of his intention to make the application, and shall file a full answer to the petition, pay all costs, if the court require them to be paid, and make it appear, to the satisfaction of the court, that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense; and each party may present affidavits."

If this section of the statutes applies to actions for divorce, the motion of the plaintiff to strike off the defendant's motion was properly overruled. The learned judge by whom this motion was heard was of the opinion that the section applies as well to judgments for divorce as to other judgments, and, in

an opinion evidencing great care and careful consideration, he gives the reasons for so holding, premising such opinion by saying:

"The authorities are not at one upon the question whether a decree of divorce may be opened or reviewed after the term at which it was entered."

All courts and text-writers have recognized that in cases of divorce questions of public policy of the gravest importance are involved, and hence courts have universally refused to interfere to set aside decrees of divorce once obtained without the clearest authority of law. Our own Supreme Court, in the well-known case of *Parish* v. *Parish,* 9 O. S., 535, uses this language in the syllabus:

"A decree from the bonds of matrimony, although obtained by fraud and false testimony, can not be set aside on an original bill filed at a subsequent term."

In the opinion in this case, at page 538, Judge Peck calls attention to a provision of the statute then, but not now in force, reading:

"No appeal shall be obtained from the decree, but the same shall be final and conclusive."

In commenting upon this, Judge Peck says:

"This statutory provision is nothing more than a legislative recognition of the principle of public policy, which had been repeatedly affirmed by the courts, that a judgment or decree which affects directly the status of married persons by sundering the matrimonial tie, and thereby enabling them to contract new matrimonial relations with other and innocent persons, should never be reopened. Such a course would endanger the peace and good order of society, and the happiness and well being of those who, innocently relying upon the *stability* of a decree of a court of competent jurisdiction, have formed a connection with the person who, wrongfully perhaps, procured its promulgation."

As to this case, it is said that no question of jurisdiction such as arises in the case under consideration was involved. It does not appear from a report of the case whether either of the parties resided in Ohio at any time. It only appears that the plaintiff was not a resident of Brown county, in which county the decree was obtained. As we view the present case, however, we do not understand that the same question of jurisdiction was involved in that as is involved here, because the ques-

tion here is, whether the court had jurisdiction, that is, authority of law, to hear and determine the rights of the parties under the motion filed· by the ·defendant. If the court was without jurisdiction to hear that motion, then it should have been stricken from the files upon the motion of the plaintiff. As has already been said, if such jurisdiction existed, it existed by virtue of Section 5355, Revised Statutes. If that section applies, then the court was authorized by law to open up a decree and let in any defense which the defendant might have made upon the original trial. There is nothing in this section which authorizes the court upon such a motion to inquire into the jurisdiction in the original case rather than to inquire into the validity of any other· defense. No question, whether jurisdictional or something else, could be inquired into by the court upon this motion without the court taking upon itself the determination of questions of fact. It would seem without doubt that the section of the statute under consideration would authorize the personal representative of a party who had died after the judgment to have the same opened up in the same manner as the party if living might himself have done, and conversely, that in a proper case a judgment might be opened up against the personal representative of one against whom such judgment had been granted. Clearly, in a ·divorce case this could not be done. A party is to be let in to defend. "Defend what?" as is said in the case of *Owens* v. *Sims, Ex'r,* 43 Tenn. Reports, 549. "Surely not a suit for divorce, for that had abated and passed beyond the limits of revivor." In this latter case the court had under consideration Section 4379 of the statutes of the state, which, after excepting certain cases, among which is not the action for divorce, this language is used:

"In all other cases, a decree against a defendant without personal service of process, who does not contest, is not absolute for three years from the decree, unless a copy of the decree is served upon the defendant; in which case it becomes absolute, if the defendant fails to come forward and make defense within six months after service."

As to this the court says, at page 548:

"It has no application to cases of divorce. * * * The legal consequence of such a construction of the statute will lead to results so anomalous and absurd, that it is clear the Legislature never intended it to be applied to divorce cases. They

rest, in our state, upon the peculiar provisions of the statutes enacted for their government; and the construction of this section of the Code contended for, is at war with the spirit, if not the letter, of the statutes of divorce in Tennessee."

In the case of *Smith* v. *Smith*, 20 Mo. Reports, 166, the court holds that the statutes of Missouri authorize the setting aside of a decree of divorce in the same manner as other decrees in chancery might be set aside. The language of the statute under which this decision was held is this:

"That the circuit court, sitting as a court of chancery, shall have jurisdiction in all cases of divorce and alimony or maintenance, and the like process and proceedings shall be had in said causes as are had in other causes on the equity side of the court. The act regulating practice in chancery provides that, when a decree has been rendered in a chancery cause against a defendant who has not been summoned and has not appeared, such final decree may be set saide, if the defendant shall appear, and by bill of review, verified by affidavit, show cause for setting it aside as against equity."

Taking these two provisions of the statutes of Missouri together—and a much stronger case for the setting aside of the decree is made than is made by the statutes of Ohio—and yet in this case a very vigorous dissenting opinion was handed down by Judge Scott, as found at page 169, *et seq.*, of the report.

In the case of *O'Connell* v. *O'Connell*, 10 Neb., 390, the court had under consideration Section 5674 of the statutes of that state, being Section 82 of the Code of Civil Procedure, which reads:

"A party against whom a judgment or order has been rendered without other service than by publication in a newspaper, may, at any time within five years after the date of the judgment or order, have the same opened and be let in to defend; before the judgment or order shall be opened, the applicant shall give notice to the adverse party of his intention to make such an application, and shall file a full answer to the petition," etc.

And, in commenting upon this section, this is said, on page 392:

"Do the provisions of Section 82 of the Code apply to actions for divorce?    *    *    *

"It is very clear, from an examination of Section 82 of the Code, that the Legislature intended to limit its application to

the cases mentioned in Section 77, and that it has no application to divorce suits.''

The Section 77 referred to enumerates causes in which service may be made by publication, and does *not* include actions for divorce, but Section 2865 of the same statutes provides as follows:

''A petition or bill of divorce, alimony and maintenance may be exhibited by a wife in her own name, as well as a husband; and in all cases the respondent may answer such petition or bill without oath; and in all cases of divorce, alimony and maintenance, when personal service can not be had, service by publication may be made, as is provided by law in other civil cases under the Code of Civil Procedure.''

From these sections it will be seen that the service by publication provided for in divorce cases is exactly that provided for in other cases, and that a literal construction of Section 82 would make it apply as well to divorce as to other cases. The authorities cited in support of the opinion of the court in this case are: *Lewis* v. *Lewis,* 15 Kan., 181; *McJunkin* v. *McJunkin,* 3 Ind., 30; *Gilruth* v. *Gilruth,* 20 Ia., 225; *Bingham* v. *Miller,* 17 Ohio, 445.

In all these cases, though the exact question here presented is not raised in all, the reasoning is to the effect that divorce cases constitute a peculiar class in themselves and are governed by principles especially applicable to such cases, a very weighty consideration being the effect upon innocent parties which may result from the opening up of decrees of divorce.

In the case of *McJunkin* v. *McJunkin, supra,* attention is called to the provision of the statute that the practice and proceedings in suits to obtain divorce shall be the same as the other cases in chancery, with certain specific exceptions. Attention is further called to the fact that under the statutes of the state it is provided that ''Parties against whom a decree has been rendered without other notice than publication in a newspaper, may, at any time within five years, have such decree opened up and be let in to a hearing, by giving notice to the original complainant, or his heirs, devisees, executors or administrators,'' etc. This provision differs from the provision of our statute in that it in terms provides that the judgment may be opened up as against heirs, devisees, executors, etc.; but if what was said earlier in this opinion as to the rights of

personal representatives under our own statute is correct, then this statute in effect is what our statute is on the same subject.

In noticing the distinction to be made between divorce and other cases, the court, in this McJunkin case, calls attention to the fact that in divorce cases the defendant is not required to make a full answer, and that a general denial made in answer in a divorce case need not be verified by the oath of the defendant.   This is equally true under our statutes; indeed, without any answer whatever under our statutes, the court is authorized to grant a divorce without full proof of the facts upon which the party obtaining it is entitled to obtain it, even though no objection is made.

The court, further, in the McJunkin case, uses this language:

"The rights of *bona fide* purchasers of property, sold under the decree sought to be opened, are protected by another section, but no provision is made that children born of a second marriage, before the opening of the decree, shall be legitimate; and upon the whole, taking all the provisions of both chapters and the consequences which would follow a different decision into consideration, we think the judgment of the circuit court should be affirmed" [which judgment was to deny the right to have the decree opened.]

By Section 5356 of our own statutes a like provision is made for the protection of those who have obtained property on the faith of a decree, and there is the same omission in our statute as to children born of a marriage contract on the faith of such decree.

The conclusion reached by us is that the court of common pleas erred in overruling the motion made by the plaintiff to strike the defendant's motion and affidavits from the files, and that by reason of such error all of the judgments and orders made by the court after overruling such motion of the plaintiff were erroneous.   The judgment, therefore, overruling the plaintiff's said motion is reversed, and the judgments thereafter made in the case are reversed, and, proceeding to enter the judgment which the court of common pleas should have entered, the motion of the plaintiff to strike the defendant's motion and affidavits from the files s sustained.

*E. B. Bauder, W. C. Rogers,* for plaintiff in error.

*Emil Joseph,* for defendant in error.