### JOHN A. LEWIS v. MARY ANN LEWIS.

1. ACTION OF DIVORCE; *Constructive Service.* The mailing of a copy of the petition and publication notice, required by § 641 of the civil code, is a part of the service required in cases of divorce upon non-resident defendants.

2. DIVORCE; *Opening Decree; Code Construed.* Where a decree of divorce was duly and legally entered, after service by publication, and the mailing of a copy of the petition and publication notice, as required by § 641 of the code, *held,* that the defendant could not come in under § 77 of the code, and upon the showing of want of actual notice have the decree set aside and be let in to defend.

3. ————— *Barring Defendant's Interest in Property.* Where the decree of divorce contained no other order concerning property than one barring defendant of all right and interest in the property of plaintiff, *held,* that this order must stand with the decree, and the decree being undisturbed, the order could not be set aside.

### *Error from Wabaunsee District Court.*

LEWIS filed his petition for a divorce, alleging his intermarriage with defendant at Edinburgh, Scotland, in May 1859; that he had resided in Kansas more than a year, and was now a resident of Wabaunsee county; that he had at all times been a faithful and obedient husband; that defendant, disregarding her duties as a wife, had been willfully absent from plaintiff for more than one year last past, without any cause or justification therefor. He prayed for a divorce from defendant, and for the custody of a minor son, the issue of said marriage, and for a decree that defendant be debarred from any interest or dower estate in property of plaintiff. This petition was sworn to "as true," by *Lewis,* August 5th 1873. The subsequent proceedings, to and including the decree, are stated in the opinion, *infra.* The decree was entered September 18th 1873. On the 21st of said month *Lewis* intermarried with Sarah Elizabeth Hafer, to whom was born a daughter June 23d 1874, the issue of said marriage. On the 20th of June 1874, notice was served on *Lewis,* by the attorneys of the divorced wife, and further,

that application would be made to the court at the next term therof, to have said decree of divorce opened, and letting the said *Mary Ann Lewis* in to defend said action. Said motion was made, accompanied by an answer, verified by said *Mary Ann* at Edinburgh, Scotland, March 17th 1874. In this answer, among other matters, said *Mary Ann* alleges that on the 5th of August 1872, at the township of St. George, Pottawatomie county, Kansas, where she and the said plaintiff then were and for a long time had been residing, "the plaintiff freely consented to the defendant leaving said Pottawatomie county and going to Edinburgh, Scotland, for her health," and that she did thereupon so leave "on the representation that he intended to rejoin her there so soon as he could wind up his affairs in said Pottawatomie county." Said motion was brought on for hearing at the September Term 1874 of the district court. On such hearing, said *Lewis* appeared and filed an affidavit, alleging that he mailed a copy of his original petition and a copy of the publication notice to defendant on the 9th of August 1873, as required by § 641 of the civil code; that said petition and notice were received by said *Mary Ann*, who, on the 24th day of February 1874, "commenced a suit against this affiant in the courts of Scotland, to-wit, the Court of Sessions of Edinburgh, Scotland, for alimony, in which suit this affiant had been duly notified by 'summons of aliment,' and which suit so commenced is now still pending and undetermined;" and he annexed to his affidavit a copy of the "summons of aliment" served on him, as follows:

VICTORIA, by the Grace of God, of the United Kingdom of Great Britain and Ireland, Queen, Defender of the Faith: To messengers-at-arms, our sheriffs, in that part conjunctly and severally, specially constituted, Greeting:

Whereas, it is humbly meant and shown to us by our lovite, Mrs. Mary Ann Montgomery Jollie Devlan, otherwise Lewis, presently residing in Buccleuch Place, Edinburgh, wife of John Augustus Lewis, sometime manufacturer of cut and engraved glass in Edinburgh, now farmer, and residing near Wamego, Pottawatomie county, Kansas, United States of

America, or elsewhere furth of Scotland to the pursuer unknown. Pursuer against the said John Augustus Lewis, her husband, defender, against whom arrestments have been used *ad fundandam jurisdictionem,* in terms of the condescendence and note of pleas in law hereunto annexed; Therefore the defender ought and should be decerned and ordained by decree of the Lords of our Council and Session to make payment to the pursuer of the sum of one hundred pounds sterling yearly, for aliment to her, payable at two terms in the year, Seventeenth August, and Seventeenth February, by equal portions, beginning the first term's payment of said aliment as at Seventeenth August, eighteen hundred and seventy-two, for the half-year immediately following, and-so-forth, half-yearly thereafter during their joint lives, or until the defender adhere to the pursuer, with the lawful interest on each half-year's aliment from the term of payment until payment, but under deduction of the sum of fifty pounds paid by the defender at various times between the said 17th day of August 1872 and the 24th day of November 1873. And further, the said defender ought and should be decerned and ordained by decree foresaid to make payment to the pursuer of the sum of fifty pounds sterling, or such other sum as our said Lords shall modify, as the expenses of the process to follow hereon, conform to the laws and daily practice of Scotland used and observed in the like cases as is alleged.

Our will is herefore, and we charge you, that on sight hereof ye pass and in our name and authority lawfully summon, warn and charge the said defender, personally or at his dwelling-place, if within Scotland, and if furth thereof, by delivery of a copy hereof at the office of the keeper of the record of edictal citations, in terms of the statute thereanent, to compear before the Lords of our Council and Session, at Edinburgh, or where they may happen to be for the time, the said defender, if within Scotland the seventh day, and if furth of Scotland the fourteenth day next, after the date of your citation, in the hour of cause with continuation of days, to answer at the instance of the pursuer in the matter libelled, that is to say, to hear and see the premises verified and proven, and decree and sentence pronounced by our said Lords, or else to allege a reasonable cause in the contrary, with certification as effiers: Attour that in the meantime ye lawfully fence and arrest all and sundry the whole readiest movable goods and gear, debts and sums of money, and other

movable effects belonging or addebted to the said defender, wherever or in whose hands soever the same may be found, all to remain under sure fence and arrestment aye, and until sufficient caution and surety be found acted in the Books of Council and Session, that the same shall be made forthcoming to the pursuer, as accords of law, according to justice, as ye will answer to us thereupon. Which to do, we commit to you conjunctly and severally, full power by these our letters, delivering them, by you duly executed and indorsed, again to the bearer.

Given under our signet, at Edinburgh, twenty-fourth February, eighteen hundred and seventy-four.

T. E. O. HORNE, W. S.

To this summons was annexed a "condescendence," which answers to a bill in chancery, or a petition under the code, (in which, as in the foregoing summons, the plaintiff therein is called "pursuer," and the defendant "defender,") setting up the relation of the parties, and the grounds upon which the decree for alimony (or "aliment") is asked. Among other matters it alleges that *Lewis* supplied said *Mary Ann* with the means for her trip from Kansas to Edinburgh, and had continued to write and send her money thereafter until November 24th 1873, (two months subsequent to the decree of divorce.) Said summons also bears the following indorsement:

"*Copy of Messenger's Execution:*

"This summons executed by me, Andrew Webster, messenger-at-arms, against John Augustus Lewis, defender, (as being furth of Scotland,) by delivering for him a full double thereof, excepting the will, having a just copy of citation subjoined, at the office of the keeper of the Record of Edictal Citations within the general Register House, at Edinburgh, in presence of Alfred McLellan, residenter in Edinburgh, this twenty-seventh day of February, eighteen hundred and seventy-four years.                         AW. WEBSTER.

"*Alfred McClellan, witness.*"

The district court, upon the hearing of said motion, made specific findings of fact, which are copied in full in the opinion, *infra,* and thereupon made an order vacating said decree, and permitting said *Mary Ann* to appear and defend,

and also made a separate order granting temporary alimony to enable defendant to return from Scotland, and to pay counsel for prosecuting her defense. The first-mentioned order is as as follows:

(*Title.*) "And now comes the said *Mary Ann Lewis*, defendant, by her attorneys, R. S. Hick, and Merritt & Merritt, and also comes the said plaintiff *John A. Lewis*, by A. H. Case and D. V. Sprague his attorneys, and thereupon comes on to be heard the motion, amended motion, answer, and affidavit of the said defendant filed in this action to obtain an order of said court opening the judgment obtained by said plaintiff against said defendant at the September Term 1873 of said court, and allowing said defendant to be let in to defend said action. And after hearing the evidence in the case, and argument of counsel, it is considered and adjudged by the court now here, that the said judgment and decree heretofore, and at the September Term 1873 of this court, rendered in this action, be and the same is hereby opened, and the said defendant is let in to defend said action. And it is further ordered that the cause be continued until the next term of this court," etc.

From these orders and decisions the plaintiff, *John A. Lewis*, appeals, and brings the case here on error.

*D. V. Sprague*, and *Case & Putnam*, for plaintiff:

1. As to the notice to defendants who are absent from the state: As we understand it, if the notice has been made according to law, or the order of the court, such notice gives the court complete jurisdiction of the case: 2 Bishop on Mar. & Div. § 314. The court has found that such notice had been given, and that it had jurisdiction of the case. But the defendant says, "I had no actual notice until the decree was entered," and in her affidavit says that she had no notice until after the court had adjourned. Sec. 77 of the code reads, that "a party against whom a judgment or order has been rendered *without other service than by publication in a newspaper* may," etc. But here there was "other service"—a "copy of the petition, with a copy of the publication notice attached thereto, addressed to the defendant at her place of

13—15 KAS.

residence," were served as required by § 641 of the code. Said § 641 is not directory, but mandatory. It must be strictly complied with, or the affidavit excusing the service made. In 5 Ohio, 318, the court refused to dismiss for want of it, but continued the case *for service,* and held that without this service the court had *no jurisdiction.* So also in 1 Mich. 480. Section 77 does not apply to divorce cases: 3 Ind. 30.

2. As to the policy of the law : Where a divorce is granted upon which one of the parties contracts new relations, and a third party acquires rights, it cannot be that a process could be had to reverse a decree the consequences of which would be a severance of all those new relations. 5 Ohio, 126; 17 Ohio, 318 ; 4 Paige, 425. And see 12 Penn. St., 328.

There is no charge of fraud in this case, consequently all decisions based solely upon charges of fraud have no application, and are not referred to. Considerations of policy unite with the dictates of justice in forbidding any interference with the parties after a divorce has once been granted. The first marriage, in all such cases, without regard to the divorce, has ceased for all the purposes for which it was contracted. Its sorrows and disappointments have come, and are without a remedy. The breaking up of the second marriage may be revenge, but it is no reparation for the evils that have been already done. It is only a multiplication of the distresses and misfortunes of innocent women and children. The woman marries the man on the faith of the decree, which assures her that he is an innocent and injured party.

*Merritt & Merritt,* and *R. S. Hick,* for defendant :

In opening and reversing judgments rendered, the code makes no distinction between divorce and other cases. Sec. 72 of the code enumerates all cases in which constructive service may be made, which includes specifically actions for divorce. Sec. 77 provides for opening judgments where service has been made as provided by § 72, and when the defendant had no actual notice of the pendency of the action

before its determination. Sec. 568, subdivision 2d, provides for vacating a judgment for a divorce in the following language: "By a new trial granted in proceedings against defendants constructively summoned, as provided in § 72." In this case there was no other service than by publication. The copy of the petition, with a copy of the publication notice attached, required by § 641 of the code to be mailed to the defendant when his or her residence is known, even if received, is not service. If it is not part of the service by publication, it is not "other service,"—is not service at all. What is meant by "other service than by publication in a newspaper," is evidently actual service—the service of a summons, either within or without the state—the only "other service" known to the code. See Code, Art. 6; Laws 1871, p. 273. But even if the mailing of such copies to the defendant is service, when received, it certainly is not service when not received by the defendant. It is only an attempt at service, which fails. It is no more service than is merely delivering a summons to an officer. In this case the court found that the defendant did not receive the copy of petition and publication notice mailed to her until after the decree was rendered.

There is no reason of public policy, or of hardship to innocent parties, that can be assigned against the power to open a decree of divorce under § 77 of the code, which does not apply with equal force against opening such a decree on the ground of fraud in obtaining it, or by proceedings in the supreme court to reverse it within three years after its rendition. The consequence to innocent parties are precisely alike in all of these cases. Yet the reports are full of precedents for opening and setting aside such decrees for fraud, and on proceedings in error, without regard to the consequences which may ensue to those who are not parties: 12 Penn. St. 328; 20 Wis. 499; 30 Wis. 667; 51 N. H. 388; 12 Barb. 640. In the case of *Warner v. Warner*, 11 Kas. 121, this court says, "The defeated party in a divorce suit can take the case to the supreme court, and if error be shown can obtain a re-

Lewis v. Lewis.

versal as in *any other* action." To deny the authority of the court to open the decree and let the defendant in to defend, under § 77 of the code, would be to hold that the law does not mean what it says in plain English. And this, as we understand it, the court is asked to do because, and only because, to hold otherwise would work wrong and injury to others who are not parties to the suit. But this question of hardship, we think, is one for the legislature, and not for the courts.

In any event, we apprehend, there can be no doubt of the power of the court to open the decree and let the defendant in to defend as to alimony; and if it should be held that the court could do no more, the order opening the decree should only be modified so as to give it that effect.

The opinion of the court was delivered by

BREWER, J.: The plaintiff, on the 5th of August 1873, filed his petition for divorce against the defendant, in the district court of Wabaunsee county, and at the September Term 1873 of said court obtained a decree of divorce. The service was by publication in the local paper, and by sending a copy of the petition and publication, as provided by § 641 of the civil code. Shortly after this decree, the plaintiff married one Miss Hafer, and by this last marriage had a child born to him. His second wife acted in good faith. His second wife, and the child, are alive, and living with the plaintiff. Such marriage and birth were prior to the proceedings of the first wife to set aside the decree. Before the September Term 1874 of said court, but after the September Term 1873 and the March Term 1874 had adjourned, the defendant filed her affidavit and answer, under § 77 of the code, to set the decree aside, and to open it, and to let her in to defend, on the ground that she had no *actual notice* of the pendency of the action before the decree was entered, and before the court adjourned at the September Term 1873. Upon the hearing of this application, the court found as follows, to-wit:

"1st.–That there was due and legal service made by publication in a newspaper, as prescribed by law.

"2d.–That there was a copy of the petition and publication notice sent by mail, postage paid, as prescribed by § 641 of the civil code of 1868, on the 9th day of August 1873.

"3d.–That said copy of petition was not received by the defendant, who was then at Edinburgh, Scotland, until after the decree of divorce was rendered, and that no other service in the case was had or made than as above stated.

"4th.–That the defendant had no actual notice of the pendency of this suit until after the decree was rendered."

And upon these facts the court made an order opening the decree, and letting the defendant in to defend the action. Was there error in this order? Sec. 72 enumerates the cases in which service by publication may be had, and among them expressly enumerates actions for divorce. No question therefore can be made as to the legality of the decree of September, 1873. Sec. 77, upon which this application was based, provides that, "A party against whom a judgment or order has been rendered without other service than by publication in a newspaper, may, at any time within three years after the date of the judgment or order, have the same opened, and be let in to defend. Before the judgment or order shall be opened the applicant shall give notice, * * * and make it appear to the satisfaction of the court, by affidavit, that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense; but the title to any property, the subject of the judgment or order sought to be opened, which, by it, or in consequence of it, shall have passed to a purchaser in good faith, shall not be affected by any proceedings under this section, nor shall they affect the title of any property sold before judgment under an attachment." The question of the permanence of a decree of divorce, when attacked either by proceedings in error, by motion to set aside, or by direct proceeding on account of fraud and imposition, has frequently been before the courts, and the decisions are far from uniform. In *McJunkin v. McJunkin*, 3 Ind. 30, a decree of divorce was rendered upon constructive service. The court held that a section of the statute, similar to our § 77 above quoted, was inapplica-

ble, and partly because no provision was made for a case like the one before us, a marriage intermediate the decree and the application. In *Bascom v. Bascom*, 7 Ohio, 465, the court decided that a decree of divorce was not the subject of review in the supreme court. It was conceded that the statute provided that divorce cases should be governed by the rules respecting proceedings in chancery, and that in chancery cases the right of review existed; but there was this difference: in divorce cases the testimony was oral, in chancery by deposition. Upon this difference the court concluded that there was no review of a decree of divorce. Manifestly a controlling consideration was the danger of intermediate marriage. It used this language in the opinion: "When a divorce is granted, upon which one of the parties contracts new relations, and a third party acquires rights, it cannot be that a process could be had to reverse a decree, the consequences of which would be a severance of all those new relations. Such anomalous mischief cannot be engrafted on the practice of our courts, except by clear and explicit legislative enactment. That, we feel confident, can never take place. All the reasons that render a decision upon facts by a jury conclusive between the parties, unite in requiring that the decision of a court upon facts, on the hearing of a petition for a divorce, should be final, and stand beyond reach of judicial revision." The same court subsequently, in *Bingham v. Miller*, 17 Ohio, 445, after deciding that the legislature had no power to grant divorces, yet in view of the fact that that power had been exercised without question for a series of years, and to hold the divorces void would bastardize many children, refused to disturb a divorce so granted. It also, in *Parish v. Parish*, 9 Ohio St. 534, decided that a decree of divorce obtained by fraud could not be set aside on an original bill filed at a subsequent term. The same doctrine was announced in *Green v. Green*, 2 Gray, (Mass.) 361, Ch. Justice Shaw delivering the opinion. Yet in the same state, in *Edson v. Edson*, 108 Mass. 590, the supreme court sustained an application made by the

defendant in the case itself, to open up the decree and be let in to defend, on the ground that the service, which was by publication, though regular on its face, and apparently good, had been secured by false and fraudulent representations as to residence of plaintiff, ignorance of defendant's residence, etc., and that therefore no legal service had been made so as to give the court jurisdiction; and in the opinion it uses this language: "Reasons of public policy, or a regard to the consequences which might ensue to innocent parties from the exercise of a power to invalidate a decree of divorce after it had become *res adjudicata*, do not constitute sufficient reasons for a denial of the existence of the power." In *Dunn v. Dunn*, 4 Paige, 425, service had been made of the subpœna outside of the state. On an application to set aside the decree, the chancellor held the service bad, but inasmuch as there had been a second marriage, while he permitted the question of the grounds for a divorce to be tried, refused to disturb the decree unless upon such trial it should appear that there were no sufficient evidence to sustain it. In other words, the case was to be tried after the decree. On the other hand, in *Adams v. Adams*, 51 N. H., a decree was set aside which had been obtained upon constructive testimony. In *Weatherbee v. Weatherbee*, 20 Wis. 499, service had been made by delivering a copy of the summons to the defendant outside of the state. A motion was made to set aside the decree, on the ground of irregularity in the service, and it was sustained. *Cranch v. Cranch*, 30 Wis. 667, in some respects resembles the case at bar. On an affidavit by the plaintiff of ignorance of defendant's whereabouts, an order was made by a court commissioner for service by publication, publication made, and decree entered. There was a subsequent marriage, and after-begotten children. On motion to set aside the decree, the order for publication was held void because made by one who, though a court commissioner, was attorney of the plaintiff, and because the affidavit of plaintiff was clearly shown to have been false and perjured testimony. In *Allen v. Maclellan*, 12 Penn. St. 328, C. J. Gibson uses

Lewis v. Lewis.

the following strong language: "It may seem an arbitrary act to expunge a sentence of divorce with a stroke of the pen, bastardize after-begotten children, involve an innocent third person in legal guilt, and destroy rights acquired in reliance on a judicial act which was operative at the time." Yet the power of the court so to do was sustained.

It may be said in reference to the case before us, as distinguishing it from some that have been noticed, that it contains nothing, as shown by the findings of the court, to impeach the regularity and fairness of the proceedings. Whatever may be the merits of the dispute between the parties, and whatever upon a hearing of both sides might have been the judgment of the court, it is plain that the steps pointed out by the law were fairly and correctly taken. Service was legally, and without any trick, falsehood, or imposition, made, and the decree was, when entered, in all respects legal and valid. It must be apparent too, from the cases noticed, that ofttimes the hardship of an adverse ruling, if it has not directly led to the decision made, has induced the court to magnify matters of minor importance into circumstances of controlling weight. At the risk of being subjected to a like criticism, we are constrained to hold, that § 77 does not apply to proceedings for divorce. "Without other service than by publication in a newspaper," is, by its terms, the test of a right to its provisions. It is true, that in § 72 it is said that "service may be made by publication * * * in actions to obtain a divorce, when the defendant resides out of this state." And if this were the only provision, it would be difficult to deny the applicability of § 77. But in the article concerning divorce and alimony, art. 28 of the code, Gen. Stat., p. 757, § 641, it is provided that, "when service by publication is proper, a copy of the petition, with a copy of the publication notice attached thereto, shall within three days after the first publication is made be inclosed in an envelope, addressed to the defendant at his or her place of residence, postage paid, and deposited in the nearest post-office, unless the plaintiff shall make and file an affidavit that such residence is unknown to the plaintiff, and cannot be

ascertained by any means within the control of the plaintiff."
Now this a part of the service. Without it no decree can
properly be entered. It is a precaution ordered by the legis-
lature to guard against the danger of decreeing a divorce
without the knowledge and presence of both parties. It may
be very inadequate, but it is worth something. It is a step in
the right direction. But whether adequate or not, it is the
legislative direction, and as such may not be disregarded. It
may be said that, as in this case, the copy of the petition may
fail to reach the defendant in time for the trial, and that then
there is no other notice than by the publication, and § 77
should be held applicable. True, the mailed petition and
notice may give no actual notice; neither may the publication.
But each is an effort toward actual notice, and the two com-
bined are requisite for legal service. Service by copy at the
usual place of residence, is actual service. The copy may
fail to reach the defendant; actual notice may not be received
by him. But the service is complete, and a judgment ren-
dered cannot be opened because rendered without notice.
Service is not always equivalent to actual notice, and does
not always result in actual knowledge. It is not the actual
result of any particular step, which determines whether it is
or is not a part of the service. It is enough that the legislature
has constituted it a part. And where the legislature has not
in terms declared it a part, if the obvious scope and purpose
of the step required is to secure notice of the pendency of
the suit, it may fairly be considered a part of the service.
Again, it may be said that if an affidavit of ignorance is filed,
as provided, no copy is mailed, and then the only notice would
be by publication. If the affidavit was false, it would make
a case much resembling those cited from 30 Wis., and 108
Mass. But it will be time enough to decide that question
when it arises. The conclusion then, to which we have come,
though, as we freely admit, with grave doubts, is, that the
mailing of the copy of the petition and notice, as required by
said § 641, is a part of the service, and that therefore, in a
case where such mailing has been duly made in addition to

the publication of notice in the paper, § 77 does not apply, and that a 'decree legally entered under those circumstances cannot be set aside upon the mere showing of actual ignorance of the pendency of the suit.

As the decree barring the defendant of any interest in the plaintiff's property follows from the divorce, we cannot open the decree as to the one, while sustaining it as to the other.

The judgment will be reversed, and the case remanded with instructions to overrule the application to set aside the decree and let the defendant in to defend.

All the Justices concurring.