## SCHOOL DISTRICT No. 57 v. BOARD OF EDUCATION OF CITY OF EMPORIA, *et al.*

1. CONSTITUTIONAL LAW; *Powers of Boards of Education; School Districts*. Section 99 of chapter 100 of the laws of 1872, which empowers the board of education of cities of the second class to attach to such cities for school purposes adjacent territory upon the application of a majority of the electors of such territory, is constitutional and valid.

2. ———— *Notice to School Districts*. Notices in such cases to the school district to which such territory belonged, is not a condition of valid action.

### *Error from Lyon District Court.*

SOME time prior to 1872, *School District No. 57, of Lyon county*, was duly organized, comprising 21 eighty-acre tracts of contiguous territory, adjoining the city of Emporia, on the east. In 1872 said district voted and issued bonds to the amount of $1,500, and erected a substantial school-house. In July 1873, on the petition of *J. J. Wright* and eight others, a majority of the electors residing upon the five eighty-acre tracts immediately adjacent to said city, the *Board of Educa-*

*tion* of said city of Emporia attached said last-mentioned tracts to said city for school purposes. An appeal (or what was intended as an appeal—but *quœre,* is such an appeal allowed by law?) was taken by E. B., one of the resident electors on the detached territory, to the board of county commissioners, the proceedings whereon sufficiently appear in the opinion. In June 1874, this action was commenced in the district court by said *School District No. 57,* as plaintiff, against said *Board of Education,* the board of county commissioners, and said petitioners *Wright* and others, as defendants. Said district, in its petition, alleged its due organization as a school district—the issuing of district bonds—the location and erection of a school-house—claimed that said bonds were outstanding and unpaid, and were a "valid lien upon all real property contained in said school district, and all the inhabitants residing therein were and still are bound by law to assist in the discharge of said indebtedness." And said petition contained also the following averments:

"And your petitioner further represents, that a certain number of evil-disposed persons, hereinafter named, for the purpose of breaking up and destroying said school district, and to avoid the payment of their share of the bonds so issued by said school district, presented to the board of education of the city of Emporia the following petition, to-wit," [*setting forth the petition in full—and then proceeding as follows:*] "And afterward, on the 7th of July 1873, the following action was had by said Board of Education as shown by the records of said board:

"'On receipt of a petition from the majority of electors living on the following described territory, such territory was attached to the city of Emporia for school purposes, to-wit: the S.E.$\frac{1}{4}$ of section 9, the N.E.$\frac{1}{4}$ of section 16, (except 20 acres in northwest corner of said quarter-section belonging to Marsh and Croswell;) also, the N.E.$\frac{1}{4}$ and S.E.$\frac{1}{4}$ of the S.E.$\frac{1}{4}$ of said section 16, all in township 19, range 11 east. And the clerk of the school board was instructed to notify the county clerk of such action.'

"Which action of said Board of Education of the city of Emporia your petitioner states was in violation of law, and contrary to equity and good conscience, and therefore absolutely void." [*Then follows a statement of the appeal taken by E. B. to the county board, and the action thereon of said board, after which is the following:*] "The plaintiff avers that

35—16 KAS.

the portion of territory that the county commissioners attempted to detach from said school district was the most densely populated portion of said district, and contained more wealth than any other portion; that the total taxable personal property in the whole district for the year 1873 was $50,726.40, of which the sum of $47,401, by such division of said district, is taken from said district, and released from its proportion of the necessary taxes to pay off and discharge said bonded indebtedness; that by reason of said attempted detaching of said territory and property, school-district taxation for school purposes has become burdensome, and the balance of the inhabitants residing in said school district have been compelled to dispense with school for a great portion of the year, and are compelled to raise a sinking-fund toward the extinguishment of said school bonds, and it has had a tendency toward the breaking-up and destroying the entire school district. Wherefore, and in consideration of the premises, and the reasons hereinafter named, the plaintiff asks that the order of the board of county commissioners, and the order of the board of education made as hereinafter set forth, and all the acts and doings of said board of education and board of county commissioners in the premises be set aside, canceled, and rescinded, and declared to be absolutely null and void, and henceforth held for naught, for the following reasons, to-wit:

"1st, That School District No. 57, being a corporation, acting under and by virtue of the laws of the state of Kansas, the board of education or no other corporate body has the right to detach any portion of its territory.

"2d, The bonds voted and the indebtedness incurred by said school district became a lien on all the real property of said district.

"3d, No person or corporation can absolve themselves from their indebtedness by their own acts except by payment thereof.

"4th, No portion of the corporation can withdraw from the main body except by a majority of said body, or the judgment of a judicial tribunal.

"5th, No portion of a corporation can shift its obligations to another portion thereof without the consent of the whole body.

"6th, School District No. 57 was not made a party during any of the proceedings before either the board of education of the city of Emporia, or before the board of county commissioners.

"7th, Said board of education had not nor had the county board of commissioners any jurisdiction of the persons residing on said territory attempted to be detached from said district who were not petitioners asking to be detached, nor jurisdiction over the property of said non-petitioners."

The defendants demurred to the petition, for that it did not state facts sufficient to constitute a cause of action. The district court, at the September Term 1874, sustained the demurrer, dismissed the petition, and gave judgment in favor of the defendants for costs. The *School District* appeals, and brings the case here on error.

*F. E. Smith,* for plaintiff, contended, that the school district not being made a party to the proceedings, the action of the board of education, and county board, were void, and cited 5 Kas. 525; 7 Kas. 432; 11 Kas. 128; 8 Mich. 100; 12 Mich. 390. As no notice was given to the persons whose rights were to be affected, the proceedings of both said boards were void: 8 Kas. 133, 143; 1 Douglas, 390. The board of education of the city of Emporia has not any legal or constitutional power to reach beyond the corporate limits of the city and take territory of a duly-organized school district and attach such territory to the city for school purposes. Sec. 99 of ch. 100, laws of 1872, under which defendants claim the power to act, is clearly unconstitutional. But if a city board of education can exercise such powers in any case, it cannot be done without notice to the district. If such should be held to be the law, notice, and the writ of subpœna, and summons may as well be abolished, and the people left to such marauders as the board of education of the city of Emporia have shown themselves to be in this case.

*E. W. Cunningham,* for defendants, contended that the school board of the city of Emporia had a right to detach the territory mentioned in its order and attach it to the city for school purposes, and to levy and collect taxes on property therein for the support of the schools of that city. (Sec. 99, ch. 100, Laws 1872.) That the legislature has undoubted

power to pass such acts, see Cooley's Const. Lim. 192, 193. The only jurisdictional fact required by this section is, that application be made to the board by a majority of the electors of territory sought to be attached; and such an application the petition shows the board had.

The opinion of the court was delivered by

BREWER, J.: Is § 99 of chap. 100 of the laws of 1872 constitutional? If so, and adjacent territory is sought to be attached to a city for school purposes, by the board of education, is notice to the school district to which the territory belonged, a condition of valid action? These are the only questions in this case.

The section empowers the board of education of a city of the second class to attach to it for school purposes adjacent territory upon the application of a majority of the electors of such territory. What provision of the constitution does this violate? Counsel refer us to none, and we fail to perceive any. He seems to rest his claim upon the proposition that the legislature cannot take A.'s property and give it to B. But we do not see how that proposition, correct as it may be, applies to this case. No man's, no corporation's property, is disturbed. The school district from which this territory was detached, does not own it. Neither does such territory become the property of the city when attached to it. The property remains the property of the same individuals after as before the change. All that is done is, to change the territory from one school district to another. Power to change school-district boundaries seems to be as full in the legislature, as the power to change county boundaries; and as to that, see the recently decided cases of *Division of Howard Co.*, 15 Kas. 194, and *Comm'rs of Sedgwick County v. Bunker*, ante, p. 498. The county superintendent is given power to create new school districts, or change the boundaries of old. No provision is made for notice. (Gen. Stat., p. 915, § 10.) Yet can there be any question of the validity of his acts in these matters? It may be that at times grievous wrong is

done by the legislature in changing the boundaries of counties, or school districts, but that is a matter beyond the power of the courts to control. Application must be made to the tribunal that decreed or authorized the change. Neither can the courts annul the change because the burden of taxation is largely increased upon the undetached territory. Given, power in the legislature to do an act, and the wisdom of the act as well as the hardships which may result therefrom, are solely for the consideration of that body.

Nor is it necessary that notice be given to the school district. It has no such vested rights as to prevent the change of its boundaries without notice and a hearing before some tribunal. In this case it appears that one of the electors upon this territory appealed to the county commissioners from the order of the board of education, and they in consultation with the county superintendent modified somewhat the order of the board of education. But still it does not appear that the school district participated in or had any notice of any of the orders or proceedings, nor was notice as we think necessary.

It is unnecessary to consider the ruling of the court upon the motion to strike out parts of the petition, for upon the whole petition we do not see any reason to hold the proceedings of the board of education void, or the section cited unconstitutional.

The judgment will be affirmed.

All the Justices concurring.