McCormick v. McCormick.

EMMA BLANCHE McCORMICK, *Appellee*, v. JOSEPH L. McCORMICK, *Appellant*.

No. 16,381.

SYLLABUS BY THE COURT.

DIVORCE — *Foreign Judgment—Publication Service—Collateral Attack—Fraud—Alimony—Res Judicata—Residence—Jurisdiction.* In December, 1907, the defendant obtained a divorce from his wife, the plaintiff, in the circuit court of Jackson county, Missouri, according to the laws of that state. The wife was residing at the time in Shawnee county, Kansas, and was served by publication only. She knew of the pendency of the action, but made no appearance. The decree made no reference to alimony or property rights. In July, 1908, the plaintiff brought an action for alimony in Riley county, Kansas, where the defendant had real estate which was sequestered to pay the judgment sought. The defendant pleaded the Missouri decree and offered it in evidence at the trial.

*Held:* (1) The present action was properly instituted in Riley county. (2) The Missouri court had jurisdiction to hear the cause before it even if the allegations of the petition were false, and to render the decree even if moved to do so by false testimony. (3) The Missouri decree was not open to collateral impeachment on the ground of fraud. (4) By chapter 184 of the Laws of 1907, which took effect on March 21, 1907, the legislature made the recognition and enforcement of foreign divorce decrees based on publication service obligatory in this state, and placed such decrees on the same basis as judgments of the courts of this state with respect to all persons, and the status of all persons, affected. (5) Giving the decree of the Missouri court the force it would have if rendered by a court of this state, it was as effectual as if it had been founded on personal service. It dissolved the marriage, and the plaintiff was no longer the defendant's wife. The cause was open for the consideration of the subject of alimony. No application for alimony having been presented and no award having been made, the judgment is a bar to the recovery of alimony now, although the matter was not specifically referred to in the decree. The facts embraced in the issues presented by the petition on which the decree rests are *res judicata.* The district court of Riley county had no authority to enforce the matrimonial obligation upon which the right to alimony depends, and the plaintiff no longer has any of the rights which a wife possesses respecting her husband's property. (6) The case of *Roe v. Roe,* 52 Kan. 724, approved and followed. The case of *Rodgers v. Rodgers,* 56 Kan. 483, distinguished.

Appeal from Riley district court; SAM KIMBLE, judge. Opinion filed March 12, 1910. Reversed.

*Charles Blood Smith, Robert J. Brock,* and *Samuel Barnum,* for the appellant.

*John E. Hessin, Philip C. Wilson,* and *William F. Schoch,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was brought by Emma Blanche McCormick to obtain alimony. Judgment was rendered in her favor and the defendant, Joseph L. McCormick, appeals.

The petition was filed on July 23, 1908, and shows the

parties were married in 1889 in Riley county, Kansas, where they continued to reside until 1905. About that time they removed to Kansas City, Mo. In September, 1907, the plaintiff removed to Topeka, in Shawnee county, Kansas, where she resided when the suit was begun. The defendant owned land in Riley county which the plaintiff sought to appropriate, but he continued to reside in Missouri. The causes of action stated were extreme cruelty, gross neglect of duty, abandonment and adultery, the facts being set forth in detail. The plaintiff justified her separation from the defendant and her removal to Kansas on the ground of his misconduct. The prayer was for alimony in the sum of $15,000, for a receiver for the land in Riley county, for a division of property, and for other relief. A receiver was appointed who took possession of the land, and the defendant was served by publication.

The defendant answered, admitting the marriage and the residence of the parties as stated, but he challenged the venue and denied the charges of misconduct contained in the petition. As a specific defense it was alleged that on December 10, 1907, the defendant was divorced from the plaintiff by a decree of the circuit court of Jackson county, Missouri, a court having jurisdiction of the subject matter and of the parties, which decree remained unreversed and in full force and effect, and consequently that the plaintiff was not the defendant's wife. As a further defense, and as a bar to the plaintiff's cause of action, the defendant pleaded in full the proceedings and judgment in the divorce suit in Missouri, and the statutes of that state governing such cases, expressly invoking the benefit and protection of section 1 of article 4 of the constitution of the United States, which provides that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. The statutes of Missouri set out in the answer prescribe the causes for which a divorce may be obtained, vest jurisdiction

3—82 KAN.

over the subject of divorce in the circuit court of the county where the defendant resides, regulate the pleadings, process and proceedings, and among such regulations provide for service by publication on nonresident defendants. The duly authenticated record of the proceedings and judgment exhibited in the answer show full compliance with these statutes, including valid service by publication. The petition stated that Joseph L. McCormick was, at the time the petition was filed, and for more than one whole year prior thereto had been, an actual resident and citizen of Jackson county, in the state of Missouri, and had continuously resided during all of that time in that county and state. A cause of action for divorce on the statutory ground of indignities rendering his condition intolerable was stated, and among other allegations appeared the following:

"Plaintiff further alleges that on or about the 26th day of September, 1907, the said defendant, without the knowledge or consent of this plaintiff, packed up the household goods belonging to this plaintiff and shipped them to some point unknown to this plaintiff, and took with her a horse and carriage belonging to this plaintiff, and took the children of plaintiff and left for some place unknown to this plaintiff, and that defendant has absconded and absented herself from her usual place of abode in this state so that the ordinary process of law can not be served upon her in the state of Missouri."

The decree which was rendered reads as follows:

"Now, on this day comes plaintiff in person and by attorney, and defendant, although lawfully summoned by publication, proof of which is made and filed herein, comes not, but makes default.

"This cause now coming on for trial is submitted to the court upon the pleadings, and after having heard the evidence the court finds that the allegations in plaintiff's petition are true; that plaintiff is the injured and innocent party and entitled to the relief prayed.

"Wherefore it is adjudged and decreed by the court that the bonds of matrimony heretofore contracted be-

tween plaintiff and defendant be and the same are hereby dissolved and for naught held, and plaintiff forever freed from the obligations thereof.

"It is further ordered and adjudged by the court that the costs herein be paid by, and that execution therefor issue against, the defendant."

The reply to the defendant's answer consisted simply of a general denial.

On the trial the plaintiff produced sufficient proof to sustain the causes of action stated in the petition, and to show that her separation from the defendant was warranted because of his wrongful conduct.  The defendant offered to show that his attorneys in the Missouri suit duly advised attorneys representing the plaintiff in her difficulties with her husband of the pendency of that action, sending them a copy of the publication notice containing the date she was called upon to answer.  The defendant further offered in evidence a letter of the plaintiff's attorneys acknowledging receipt of an acceptance of service, sent them by defendant's attorneys for signature, and declining to sign the same.  This evidence was excluded, and the defendant duly excepted.  The plaintiff admitted she left Kansas City, Mo., without the defendant's knowledge and without telling him where she was going, and admitted she did not notify him, after she arrived in Topeka, where she was.  She also admitted she learned of the suit pending against her in Jackson county, Missouri, in October or November, 1907.  The decree in the Missouri case was read in evidence over the plaintiff's objection.

The court found for the plaintiff and granted her alimony in the sum of $8000, together with attorney fees in the sum of $500.  One ground of the decision was that under the rule announced in *Haddock v. Haddock*, 201 U. S. 562, the effect of a foreign decree of divorce is to be determined by the facts of each case. The court also said:

"That where the jurisdiction of a sister state has been invoked and made operative by a direct or indi-

rect fraud, without the existence and operation of which the jurisdiction would not have moved, the result of the exercise of that jurisdiction is void, and that upon the proposition that the integrity of the courts in the administration of justice demands that any moving of the court procured by means of fraud will be abjured promptly by that court, and that as other courts act upon the presumption that the courts will always abjure fraud, this court presumes that the circuit court of Jackson county, Missouri, under the facts as they are disclosed here, would abjure instantly any exercise of jurisdiction and deny authority for its supposed acts."

It was further stated that the facts show the existence of fraud on the part of the defendant in filing a false petition in the Missouri court, and that no attempt was made to secure personal service on the plaintiff, who was the defendant in that action. The conclusion was:

"For such reason the action of the circuit court of Jackson county, Missouri, in my judgment, does not estop or bar the exercise of the jurisdiction of this court; that it was procured by the fraud of the plaintiff, and that he knew it was false and fraudulent when he procured it."

The court also held that the action was properly brought in Riley county.

The pleadings presented no issue of fraud in obtaining the Missouri decree. The plaintiff did not attack the decree on the ground of fraud, which must be pleaded whenever relied on, and the defendant was not called upon to answer or defend against any such charge. The attempted impeachment of the decree was purely collateral, and consequently can not be sustained.

The circuit court of Jackson county had jurisdiction over the subject matter of the action. Service was made upon the plaintiff according to the method prescribed by statute. The sole question to be tried was,

Was the petition filed by McCormick false?  The court sat for the single purpose of sifting that specific subject, and, whether the petition were false or true, full jurisdiction existed to find out about the matter.  If the law were otherwise a remarkable situation would be presented.  The court, with a petition for divorce before it stating a perfect cause of action on its face, but false in fact, would have no power to summon witnesses, administer oaths or take testimony to see if the petition were true.  Although instituted for the purpose of detecting falsehood and circumventing fraud in divorce cases, it could not take a single valid step to that end.  If it should proceed to try the case and should find the allegations of the petition to be either false or true, its judgment would be a nullity because it had no power to begin the investigation.  In short, it would be impossible for a court to render a binding judgment unless it had a petition free from falsehood to act upon from the beginning.

In the case of *Larimer v. Knoyle*, 43 Kan. 338, a divorce had been granted on service by publication.  In another action in another court it was shown that the petition, the affidavit for service by publication and the affidavit in lieu of mailing a copy of the petition were all false.  The court held that jurisdiction was not affected and the judgment was not void.  Referring to the falsity of the petition as a nullification of the proceeding, the court said:

"We shall pass over the claim that the judgment in the divorce case is void for the reason that the allegations of the plaintiff's petition in that case were untrue and false, for we do not think it has ever been held by any court that a judgment was absolutely void because the allegations contained in the plaintiff's petition were in fact untrue or false."  (Page 347.)

In the case of *In re Wallace*, 75 Kan. 432, the court held, citing numerous authorities, that when jurisdiction depends on a fact litigated and determined in the

action itself, the judgment rendered is conclusive evidence of the existence of the fact and of jurisdiction until it is reversed or vacated in a direct proceeding for the purpose, and that such judgment can not be contradicted in a collateral proceeding. The law is the same in Missouri.

"All of the authorities hold that a judgment of a court having jurisdiction of the subject matter of controversy and of the parties can not be impeached collaterally in an action between the same parties or their privies in law, upon a point put in issue and decided, but that the party desiring to avoid the judgment must apply to the court which pronounced it to have it vacated. *Callahan v. Griswold*, 9 Mo. 784; *Field v. Sanderson*, 34 Mo. 542." (*Johnson v. Realty Co.*, 167 Mo. 325, 339.)

The supreme court of the United States holds the same opinion. In the case of *Michaels v. Post*, 88 U. S. [21 Wall.] 398, an assignee in bankruptcy sued a preferred creditor for property transferred. The defense was that the petition upon which the adjudication in bankruptcy was made was filed by one who had released his claim, who was not, therefore, a creditor, whose petition was accordingly fraudulent, and that, in consequence, the adjudication was void. The court said that jurisdiction is conferred if the petition which is presented sets forth the required facts, and the court, upon proof of service, finds the facts set forth in the petition to be true.

Since the circuit court of Jackson county, Missouri, had as ample jurisdiction to begin a hearing to ascertain the truth or falsity of the charges contained in the petition as the district court of Riley county, Kansas, possessed, all that followed was exercise of jurisdiction. The court might be deceived by falsehood and perjury, just as the Kansas court might be deceived by the same means, but if it were deceived it did not lose jurisdiction to exercise the power it possessed to adju-

dicate the controversy. A judgment procured by false or perjured testimony is not open even to a direct attack on that ground, when the testimony relates to an issue raised by the pleadings and tried out at the hearing. (*Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, and authorities cited in the opinion.)

Since the Missouri court had jurisdiction to investigate whether McCormick's petition for a divorce were false or true, to pass upon the testimony offered to sustain it, and to enter a decree according to its view of the proof, that decree is not open to collateral attack on the ground of fraud in a suit for alimony in Kansas. Expressions may be found in the law books to the effect that fraud vitiates whatever it touches, including judicial acts, which is true enough, subject to the limitations stated in the Blue Rapids case and provided the proper remedy be employed. In some cases courts have suffered judgments to be impeached collaterally on the ground of fraud, but the procedure is unsound. If allowed to prevail the litigation could never be brought to a close. It could always be alleged that the last judgment was procured by fraud. The rule is necessarily the same for judgments of sister states and of this state, and for judgments based on publication service as well as those based on personal service. So long as notice by publication confers lawful authority on the court to hear and determine, the determination is binding until set aside in a direct proceeding. When jurisdiction has attached, the fraud of a party in procuring an irregular exercise of jurisdiction does not destroy jurisdiction, and nothing·but want of jurisdiction is available on collateral attack.

In the case of *Simpson v. Kimberlin,* 12 Kan. 579, the court said:

"Every judgment, whether obtained through fraud or not, is valid and binding and conclusive as to all parties thereto, and their privies, until reversed, vacated, set aside, or perpetually enjoined by some pro-

ceeding instituted directly for that purpose." (Syllabus.)

In *Head v. Daniels*, 38 Kan. 1, judgment was rendered against a nonresident, served by publication only, finding an indebtedness to be due and ordering a sale of attached real estate. The sale was made and confirmed and a sheriff's deed was issued. Afterward the proceedings were attacked collaterally in an action of ejectment to recover the land. Discussing the subject of service the court said:

"The notice was in all respects, except as above mentioned, formal and sufficient; and we think it was sufficient in every respect, and valid. It was sufficient to advise Mrs. Denton of the nature and character of the action brought against her, and of her interests which were sought to be affected by the action, and was to her a substantial compliance with all the requirements of the law. This was certainly sufficient." (Page 7.)

The law relating to collateral attack was then stated as follows:

"In conclusion, we would say that collateral attacks upon judicial proceedings are never favored; and when such attacks are made, unless it is clearly and conclusively made to appear that the court had no jurisdiction, or that it transcended its jurisdiction, the proceedings will not be held to be void, but will be held to be valid." (Page 12.)

In the case of *Davis v. Hagler*, 40 Kan. 187, a guardian appointed in Illinois, and his ward, a resident of that state, removed to Kansas. Being in financial distress, the ward obtained a sum of money from the guardian and gave the guardian a receipt in full. On the strength of the receipt the guardian made a settlement with the probate court in Illinois and obtained his discharge. The court held the judicial proceedings in Illinois could not be collaterally attacked on the ground of fraud, in a suit commenced in Kansas.

In addition to what has already been quoted from *Larimer v. Knoyle*, 43 Kan. 338, the court further said:

"We do not think that she could treat the judgment as an absolute nullity, and void in a collateral proceeding, merely because of the falsity of the petition and the two affidavits.

" 'A divorce granted by the court of the domicile of both parties is valid everywhere under the constitution of the United States, and under the principles of international law, although the defendant has neither been summoned nor voluntarily appeared, provided that the laws of the parties' domicile as to notice by publication or otherwise have been complied with.' . . . 'Want of jurisdiction in the court passing it is the only cause which renders a decree of divorce absolutely void; fraud does not, nor does irregularity.' " (Pages 349, 350.)

In *Morris v. Sadler*, 74 Kan. 892, it was said that the principle of law here involved is so well established that no necessity existed for its formal promulgation again.

It is not quite apparent why the district court made the point that personal service was not made in Kansas on the defendant in the Missouri case. Such service was not essential to jurisdiction, granting it to be permissible under the laws of Missouri, and would have conferred no higher or greater authority on the court to hear and determine the cause than service by publication. True, such service gives actual notice, but the defendant in the Missouri proceeding admits she knew the suit was pending before judgment was rendered. Fraud can scarcely be predicated upon the choice of one of two equally lawful courses, but if the failure to make service personally carried an implication of secrecy the plaintiff in that case did his best to show that such implication was unwarranted. He offered proof tending to show an effort to obtain an acceptance of service, and that he sent the defendant a copy of the publication notice. True, this correspondence was between the attorneys for the respective parties, but under the circumstances due propriety required that it be so. The

tendered evidence was relevant to the questions of actual notice to the defendant and the good faith of the plaintiff, and under the court's theory of the case ought to have been received.

Another ground upon which the district court refused to recognize the Missouri decree was that under the decision in *Haddock v. Haddock*, 201 U. S. 562, the effect of a foreign decree of divorce is to be determined by the facts of each case. The facts in the Haddock case were these: A husband and wife were domiciled in the state of New York. The husband removed to the state of Connecticut and acquired in good faith a domicile in that state. The wife remained in New York. After a lapse of years the husband procured a decree of divorce from the wife in a Connecticut court, according to the laws of that state, on the ground of desertion. The wife was served by publication, and not personally. In rendering the decree the court found that the complaint and writ had been duly served and that the allegations of the complaint had been sustained. Subsequently the wife sued the husband for a divorce in New York and obtained personal service upon him there. He pleaded the decree of the Connecticut court in bar of the action and offered such decree in evidence at the trial. The evidence was rejected by the referee who heard the case. The wife was granted a divorce and alimony and the judgment was affirmed by the highest court of the state of New York. On appeal to the supreme court of the United States it was held that the trial court did not violate the full faith and credit clause of the constitution of the United States in refusing to admit the Connecticut decree in evidence. The court said:

"Without questioning the power of the state of Connecticut to enforce within its own borders the decree of divorce which is here in issue, and without intimating a doubt as to the power of the state of New York to give to a decree of that character rendered in Connecticut, within the borders of the state of New York and as to its own citizens, such efficacy as it may be entitled

to in view of the public policy of that state, we hold that the decree of the court of Connecticut rendered under the circumstances stated was not entitled to obligatory enforcement in the state of New York by virtue of the full faith and credit clause."    (Page 605.)

The decision in *Haddock v. Haddock* was rendered on April 12, 1906.   It immediately arrested public attention throughout the nation, and, whether warranted or not, great anxiety was felt in many quarters respecting the social consequences which might follow from it. For the purpose of averting any possible disaster, due either to the decision itself or to misapprehension of its doctrine, and for the purpose of establishing the law and policy to be observed by the courts of this state, the legislature enacted the following statute, which took effect March 21, 1907:

"Any judgment or decree of divorce rendered upon service by publication in any state of the United States in conformity with the law thereof shall be given full faith and credit in this state, and shall have the same force with regard to persons now or heretofore resident or hereafter to become a resident of this state as if said judgment had been rendered by a court of this state, and shall, as to the status of all persons, be treated and considered and given force the same as a judgment of the courts of this state of the date which said judgment bears.   (Laws 1907, ch. 184, § 1.)

It is perfectly clear that this statute was intended to make the recognition and enforcement of foreign divorce decrees based upon substituted service obligatory in this state.   The option left by the decision in *Haddock v. Haddock* to each state to give to such decrees within its own borders whatever efficacy they may be entitled to, consistent with its public policy, was exercised by the legislature, and such decrees were placed upon the same basis as the judgments of our own courts.   The Missouri decree in controversy was rendered on December 10, 1907.   The present action was begun on July 23, 1908, and the decree was presented to the district court for its consideration on November

30, 1908. Very clearly the statute governed the case,. and the decree should have been given the same force and effect upon Emma Blanche McCormick as if it had been the decree of a Kansas district court rendered on December 10, 1907. What would have been its force and effect under these conditions?

The question is fully and specifically answered by the decision rendered in *Roe v. Roe*, 52 Kan. 724. In that case the woman brought a suit for divorce and alimony in Montgomery county, Kansas. The man pleaded a decree of divorce from her obtained in Colorado on publication service. The decree made no reference to the subject of alimony or property rights. On the trial the district court sustained the Colorado decree, but awarded alimony. The defendant appealed,. and the only question for consideration in this court was the right of the woman to alimony under the circumstances. The laws of Colorado had not been pleaded or proved, and the court, acting on the presumption that such laws are the same as those of this. state, proceeded to determine the rights of the parties. accordingly. The material portions of the opinion follow:

"Under section 646 of the civil code, it is provided: 'If the divorce shall be granted by reason of the fault or aggression of the wife, the court shall order restoration to her of the whole of her property, lands, tenements and hereditaments owned by her before, or by her separately acquired after, such marriage, and not previously disposed of, and also such share of her husband's real and personal property, or both, as to the court may appear just and reasonable; and she shall be barred of all right in all the remaining lands of which her husband may at any time have been seized.'

"Section 647 contains the provision that 'A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party.'

"In the case of *Lewis v. Lewis,* 15 Kan. 181, it was held: 'Where a decree of divorce was duly and legally entered, after service by publication, and the mailing of a copy of the petition and publication notice, as required by section 641 of the code, held, that the defendant could not come in under section 77 of the code, and upon the showing of want of actual notice have the decree set aside and be let in to defend.

" 'Where the decree of divorce contained no other order concerning property than one barring defendant of all right and interest in the property of plaintiff, held, that this order must stand with the decree, and, the decree being undisturbed, the order could not be set aside.' " . . . "It is the general policy of the law, strongly adhered to by this court in its prior decisions, to require every question properly involved in any suit to be disposed of by the judgment finally rendered in the case. (*Comm'rs of Marion Co. v. Welch,* 40 Kan. 767; *Bierer v. Fretz,* 37 Kan. 27; *Railroad Co. v. Beebe,* 39 Kan. 465; *Westbrook v. Mize,* 35 Kan. 299; *Railroad Co. v. Comm'rs of Anderson Co.,* 47 Kan. 766.) Under the law of Kansas, the court rendering judgment in an action for divorce is authorized on a proper showing to grant alimony, whether the divorce be allowed or not. If the divorce is granted, its operates as an absolute dissolution of the marriage tie. Whatever orders with reference to alimony or a division of the property are desired by either party may then be considered and determined by the court. If they may be so considered and determined, and a party neglects to require such determination, the judgment is as full and complete a bar as if the question had been fully tried and determined. Within the case of *Lewis v. Lewis,* supra, though the rule declared may sometimes work great hardships, a judgment on service by publication is as effectual as where personal service is made. We conclude, then, that, under the evidence and the finding of the court sustaining the Colorado divorce, the parties were not husband and wife either at the time the suit was commenced or when it was finally determined, and that the court was without power to grant alimony to the plaintiff while sustaining the Colorado divorce made so long before." (Pages 727, 728.)

This declaration of the law is consistent with numer-

ous earlier and later decisions.  In *Mitchell v. Mitchell,* 20 Kan. 665, the opinion reads:

"By the dissolution of the marriage the relation of husband and wife, between the parties, ceases to exist.  The divorce granted at the instance of one party operates as a dissolution of the marriage contract as to both.  The subsequent relations of the parties are the same as though no marriage had ever been had." (Page 667.)

In the case of *Baughman v. Baughman,* 32 Kan. 538, the syllabus reads:

"Under the statute in this state a decree of divorce granted at the instance of one party operates as a dissolution of the marriage contract as to both, and the decree is only incumbered with the statutory restriction that during the six months after the rendition thereof and the pendency of the proceedings to reverse the same it is unlawful for either of the parties to marry."

In the case of *Daleschal v. Geiser, Guardian,* 36 Kan. 374, a divorced woman claimed, after her former husband's death, an interest in his real estate not mentioned in the divorce decree.  The court said:

"At the commencement of the partition proceedings it seemed to have been the belief of the attorney of Antonia Daleschal that, notwithstanding the divorce granted her, she was entitled to a portion of the real estate of which Joseph Bertsch died possessed, either as an heir at law or a dower interest; that if the decree of separation did not, in express terms, bar her right of inheritance or dower, she would still have her share of the realty, the same as if such a decree had never been rendered; that a divorce affected personal relations, but did not property rights, unless so expressed in the judgment.  This was a misconception of the law."  (Page 377.)

In the case of *Chapman v. Chapman,* 48 Kan. 636, a wife residing in Ohio obtained a divorce by publication service against her husband who resided in Kansas. The court said:

"The effect of the divorce obtained by plaintiff from John B. Chapman was to exclude her from any interest

in his property, not specially mentioned, reserved or provided for in the decree of divorce. (*Mitchell v. Mitchell*, 20 Kan. 665; *Daleschal v. Geiser*, 36 Kan. 374; *Crane v. Fipps*, 29 Kan. 585.) . . . The jurisdiction over a divorce cause, properly brought in a court under the statutes of the state where the plaintiff actually resides, gives the court authority to nullify or dissolve the marriage status, although it has obtained no control over the person of the defendant, excepting by publication. Mrs. Clarinda Chapman had her domicile in Ohio at the time of the divorce proceedings. The court, under the statute of that state, had jurisdiction, and the proceedings therein render the divorce complete. After the decree of divorce Mrs. Chapman was not legally the wife of John B. Chapman, in Ohio or in Kansas." (Pages 638, 639.)

In the case of *Wesner v. O'Brien*, 56 Kan. 724, the syllabus reads:

"The district court has power to award land as alimony in a divorce proceeding based only on constructive notice to the defendant, where the plaintiff alleges sufficient grounds for divorce and alimony in the petition, and asks to have such land appropriated as alimony, and where the publication notice contains a particular description of the land sought to be appropriated and the nature of the relief demanded."

In the opinion it was said:

"The theory that the limit of the power of the court in a divorce suit where there is no personal service is the dissolution of the marriage does not obtain in this state. In the early case of *Lewis v. Lewis*, 15 Kan. 181, it was held that upon such service a decree barring the defendant of any interest in the plaintiff's property was valid and binding." (Page 729.)

In the case of *Phillips v. Phillips*, 69 Kan. 324, a wife brought an action for alimony in Butler county, in this state, on the ground of extreme cruelty and gross neglect of duty. While the action was pending the husband sued her for divorce in Oklahoma. She filed a cross-petition there for a divorce and for alimony, on the grounds stated in the alimony petition filed in Kansas.

The Oklahoma court found that she had been guilty of desertion, that the husband was without fault, granted him a divorce, and reserved the question of property rights. The husband then pleaded this decree in bar of the action for alimony in Butler county. The district court of that county refused to recognize the decree and awarded the wife the relief prayed for. On appeal this court reversed the judgment, holding that the charges contained in the petition for alimony had been adjudicated.

In the case of *Hatch v. Small,* 61 Kan. 242, the court said:

"Unless the court granting the divorce, in exercise of authority conferred, makes a division of the property or awards alimony, the decree ends all matrimonial obligations and any right which either has acquired by the marriage in the other's property." (Page 245.)

In the case of *Durland v. Durland,* 67 Kan. 734, the opinion reads:

"The prohibition upon marriage within six months, however, was the only limitation upon the judgment as an utter annihilation of the former marital status. If no appeal was taken the ties which had bound the individuals together were absolutely and unqualifiedly broken asunder. The parties were each as fully absolved from every marital right and duty and consequence as they were before marriage, and were fully restored to the freedom they enjoyed before marriage in every respect, except they could not marry for six months. Indeed had the legislature withheld that privilege forever, still no element of the relation of husband and wife would have continued to exist." (Page 740.)

In the case of *Roberts v. Fagan,* 76 Kan. 536, a wife residing in this state procured a divorce from her husband on publication service. The opinion reads:

"The service made invested the court with full jurisdiction to grant a divorce. A valid divorce having been granted, the parties were no longer husband and wife, and thereafter their property rights were the same as before their marriage. The divorce extinguished what-

ever rights either might have had in the property of the other on account of the marriage relation." (Page 540.)

Applying these decisions to the present case the following conclusions are inevitable: The judgment of the Missouri court, rendered on service by publication, was as effectual as if it had been rendered on personal service. It operated to dissolve the marriage tie, and absolved each party from every marital right and duty. The defendant in that suit was no longer the plaintiff's wife, each one was as free as before marriage, and thereafter they bore toward each other the same relations as if the marriage had never occurred. The court was not limited to the mere dissolution of the marriage, but had authority to determine the question of alimony and make an award to the defendant. The cause being open for the claim of alimony, it should have been made there. No application for alimony having been presented, the decree is as complete a bar as if evidence had been introduced and a decision rendered thereon. It is not necessary that the decree should refer in express terms to alimony in order to have this effect. It excludes everything not expressly mentioned or reserved in it. The matters of who was innocent, who was injured and who was responsible for the separation are *res judicata*. The district court of Riley county was without authority to enforce the matrimonial obligation upon which the right to alimony depends, and the plaintiff no longer has any of the rights which a wife possesses respecting her husband's property.

The statute of 1907 does not undertake to make recognition of foreign decrees disposing of real or personal property situated in this state obligatory, but no question of that kind is here involved. All the consequences of the Missouri decree which have been enumerated are personal to the present plaintiff. The decree did not attempt to bind property, and the present action relates to alimony. Real estate is affected only as it affords a

means whereby a judgment for alimony may be satisfied, and the right to alimony depends upon the status of the plaintiff after the rendition of the Missouri decree.

The plaintiff bases her right to attack the Missouri decree collaterally upon the decision in *Litowich v. Litowich*, 19 Kan. 451. The first paragraph of the syllabus distinguishes the case:

"A judgment rendered by a probate court of Utah territory, attempting to dissolve the marriage relation existing between a husband and wife who had neither of them ever resided there or been within the territory, and being rendered without any actual notice to the wife, is void absolutely and entirely for want of jurisdiction in the court to render such a judgment."

The plaintiff argues that she is entitled to alimony under the decision in *Rodgers v. Rodgers*, 56 Kan. 483, the syllabus of which reads thus:

"The courts of a sister state, if authorized by law, may dissolve the marriage relation between a husband domiciled there and a wife residing in this state on service by publication, although unknown to her, but such courts have no power to settle the title to lands in this state, nor to control the custody of children residing here; and where a husband deserted his wife and children, leaving them in the occupation of a homestead here, and, going to another state, procured a divorce in accordance with law, but without actual notice to the wife, *held*, that though such decree was effectual as to the status of the parties, it was not a bar to the allowance of alimony in the homestead, nor as to the custody of the children, in a subsequent action brought by the wife here."

This decision is based upon *Cox v. Cox*, 19 Ohio St. 502, and *Cook v. Cook, imp.*, 56 Wis. 195. It is supported by *Thurston v. Thurston*, 58 Minn. 279, *Cochran v. Cochran*, 42 Neb. 612, and *Eldred v. Eldred*, 62 Neb. 613, and to some extent by *Graves v. Graves*, 36 Iowa, 310, and *Van Orsdal v. Van Orsdal*, 67 Iowa, 35.

No reference was made in *Rodgers v. Rodgers* to *Roe v. Roe*, 52 Kan. 724, or to any other Kansas de-

cision touching the questions covered by the syllabus quoted. No attempt was made to harmonize the declarations made with previous utterances of the court, and the case has not been cited as authority in any subsequent decision. Whether the doctrine announced be sound or unsound need not now be determined. The facts are so dissimilar from those under review that the case has no application.

In *Rodgers v. Rodgers* the wife's homestead rights were involved, and the case was treated as one affecting the title to land in this state. This assumption, if valid, would create some confusion, but it was made and was utilized in declaring the law of the case in the syllabus. The foreign divorce was unknown to the wife, and was rendered without actual notice to her. The husband deserted the wife and established a separate domicile in the foreign state. In this case no homestead rights are involved, the title of the plaintiff to any land she may have in Kansas is not affected, and no extraterritorial effect is claimed for the Missouri decree in that regard. Proof was tendered showing diligent and successful effort to apprise the plaintiff of the Missouri suit, and she admitted she had actual knowledge of its pendency. The matrimonial domicile of both parties was within the jurisdiction of the Missouri court. Therefore the two cases are unlike in all essential features, except that both were instituted to obtain alimony. In the opinion in the Rodgers case it is said that a wife may have no opportunity to set up a claim for alimony in her husband's suit for a divorce in a foreign state. The plaintiff in this case had that opportunity. It is said the court of a foreign state would not have power to deal effectively with the question of alimony, even if the wife had knowledge of the suit. This statement evidently applies to cases like the one then under decision, where homestead rights or the title to land is involved. Even in such cases no reason is apparent why a conveyance might not be ordered, and

its execution be compelled by contempt process. (See *Fall v. Eastin,* 215 U. S. 1.) It is likely to occur in any case that the bulk of the husband's property will lie outside the state of his domicile. No disability to do justice in the matter of alimony has so far been imputed to the courts of this state, and the statute of 1907 is framed on the theory that the courts of other states have equal facilities and powers. Finally, the opinion in the Rodgers case proceeds upon the declared principle that, although the parties are divorced, the relation of husband and wife may be regarded as still existing for the purpose of awarding alimony. It is now impossible to resort to such a fiction in view of the statute of 1907.

The defendant insists that notwithstanding the decision in the Haddock case the district court was obliged to give full faith and credit to the Missouri decree under the constitution of the United States, and claims that the case of *Atherton v. Atherton,* 181 U. S. 155, is controlling. It is not necessary to discuss the case in this broad constitutional aspect, since by virtue of the law and policy of this state as declared in the statute of 1907 and in the decisions of this court the defendant obtains all the relief he desires.

The action was properly commenced in Riley county. It is not necessary that the plaintiff in a suit for alimony should be a resident of the state or of any county in the state (*Litowich v. Litowich,* 19 Kan. 451, 453), and the action may be commenced in any county where the defendant may be summoned, or where he has property subject to appropriation to pay the judgment if he be a nonresident.

The judgment of the district court is reversed and the cause is remanded for a new trial.